**In the Matter of The MARRIAGE OF Martha Ann PARKER and Jim C. Parker.**

No. 06–98–00084–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 25, 1999.

Decided July 23, 1999.

Patricia A. Batton, Houston, William T. Johnson, Attorney at Law, Beaumont, for appellant.

Michael Lynn Catt, Bridge City, Stephen Dale Carlton, Orange, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

This appeal involves a dispute concerning a property division made by the trial court after the divorce of the parties. Jim Parker brings five points of error, complaining of (1) the legal and factual sufficiency of the evidence to support the award of a certain piece of real property to Martha Parker; (2) the legal and factual sufficiency of the evidence to support an award of $50,000 to Martha Parker; and (3) the division of some of the personal property.

Jim Parker and Martha Foreman were married on June 3, 1990. In February 1989, Jim Parker entered into a contract with Norman and Cheryl Journey to purchase real property at 3450 Tram Road in Vidor, Texas. Jim Parker moved onto the property immediately after signing the contract. The contract called for payment of $85,000 in the following increments: (a) payment of $5,000 at closing; (b) payment of $5,000 on August 15, 1989; (c) payment of $32,543 [1] payable on February 1, 1990; and (d) payment of $42,457.09,[2] which Jim Parker contends was due on March 1, 1990. The contract stated that the sellers would deliver a general warranty deed to Jim Parker upon the completion of the terms of the contract. However, the contract also provided that failure to comply with the conditions of the contract would constitute a breach and the contract would be terminated.

Jim Parker made the two required $5,000 payments. When the $32,500 payment came due, he borrowed the money from Allen Thomason, a business associate, and paid the amount to the sellers. Shortly after Thomason had made the $32,500 loan to Jim Parker, Martha Foreman paid Thomason the principal amount Jim Parker had borrowed, plus interest. Martha Foreman paid Thomason this amount out of insurance proceeds she had received from a fire at her home in Iowa Park, Texas, which was her separate property. On March 1, 1990, Jim Parker assigned to Martha Foreman his rights under the contract for deed. Martha Foreman borrowed approximately $42,500 from Thomason to cover the last remaining payment due on the Tram Road property. Martha Foreman executed a deed of trust in favor of Thomason to secure the loan. Jim Parker also signed the note as a guarantor. Upon payment of the $42,500, the sellers executed a warranty deed in favor of Martha Ann Foreman in March 1990 conveying the property at 3450 Tram Road to her alone.

Jim Parker testified that he assigned his rights to Martha Foreman because he was negotiating with the Internal Revenue Service regarding his outstanding tax liability and did not want the property to become subject to IRS liens, as was possible if the property was deeded to him. He further testified that he and Martha had an oral agreement that she would convey the land to him after his tax liability to the IRS was resolved. Once his tax problems were resolved, Jim Parker asked Martha for the property, and she refused to convey it to him.

The two married on June 3, 1990. On January 12, 1991, the home on Tram Road

---

1. For simplicity, this payment was referred to as the payment for "$32,500" during trial and will also be referred to as such in this opinion.

2. For simplicity, this payment was referred to as the payment for "$42,500" during trial and will also be referred to as such in this opinion.

burned. In settlement of this claim, the insurance company paid a total of $389,000, which consisted of $250,000 for the dwelling, $125,000 for contents, and $14,000 for additional living expenses. All of the checks were payable to both Jim and Martha Parker. Martha Parker took the $250,000 check which had been endorsed by Jim Parker and turned it over to Allen Thomason. Thomason returned a check of $201,000 to Martha Parker and extinguished the $42,500 debt (with interest) which Martha owed him for the purchase of the Tram Road property. She then deposited the $201,000 into her own separate account. Martha Parker also deposited a $20,000 check, which was an advance on the contents coverage, into her personal account. She then gave Jim Parker $9,500 of that amount, ostensibly to reimburse him for the $10,000 he had originally put down on the Tram Road property before he assigned the contract to her. Martha Parker claims that Jim Parker took the $125,000 contents money and the $14,000 additional living expense money to start a corporation, Lou–Tex, Inc., and to purchase equipment. It appears that Martha Parker later transferred $125,000 of the $201,000 she received back into the community property bank account. The house on Tram Road was rebuilt.

Jim Parker also testified that he paid Martha Parker the $32,500 that she had paid to Thomason to extinguish Jim Parker's debt for the payment on the house.

Martha Parker filed for divorce on August 20, 1992. The divorce was granted on October 16, 1997, and was severed from the remaining suit regarding the property division. After a number of hearings concerning the division of property, the final order on the property division was signed and entered on January 20, 1998. The Tram Road property was characterized as Martha Parker's separate property and therefore awarded to her. Martha Parker was also awarded $50,000 in the form of a judgment against Jim Parker "[f]or the purpose of a just and right division of property...." Jim Parker now brings this appeal.

In the first and second points of error, Jim Parker complains that the evidence is legally or factually insufficient to support an award of the Tram Road property to Martha Parker.

■ In deciding a no evidence claim, we consider the evidence and inferences tending to support the finding. *See Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex.1992). We disregard all contrary evidence and inferences. *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 275–76 (Tex.1995); *Havner*, 825 S.W.2d at 458. Any evidence of probative force supporting a finding requires us to uphold the verdict. *See Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). We sustain a no evidence point only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the rules of law or evidence bar consideration of the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 795 n. 3 (Tex.1991). If there is more than a scintilla of evidence to support the finding, the claim is sufficient as a matter of law and any challenges go merely to the weight to be accorded the evidence. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993).

■ An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination and, if reversing, to detail that evidence in the opinion. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 29 (Tex.1993).

■ Property possessed by either spouse during or on dissolution of mar-

riage is presumed to be community property. TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). A party attempting to overcome this presumption must establish by clear and convincing evidence that the disputed property is separate. *Id.* The party claiming separate property must trace and identify the property claimed as separate property by clear and convincing evidence. Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property. *Hilliard v. Hilliard,* 725 S.W.2d 722, 723 (Tex.App.-Dallas 1985, no writ). Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *See Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975).

■■■ In the present case, the evidence establishes that Jim Parker entered into a contract for deed for the property prior to the marriage. The inception of title occurs when a party has the right of claim to the property by virtue of which title is finally vested. *Strong v. Garrett,* 148 Tex. 265, 224 S.W.2d 471, 474 (1949). Both parties testified that Jim Parker had purchased the property under a contract for deed prior to the marriage. This determined the character of the property as Jim Parker's separate property. *See Carter v. Carter,* 736 S.W.2d 775 (Tex.App.-Houston [14th Dist.] 1987, no writ); *Roach v. Roach,* 672 S.W.2d 524 (Tex.App.-Amarillo 1984, no writ). However, Jim Parker assigned his rights under the contract for deed on the Tram Road property to Martha Foreman before their marriage. Martha Foreman then fulfilled the obligations under the contract, and the property was deeded to her prior to their marriage.

Property owned before marriage is characterized as a spouse's separate property. TEX. FAM.CODE ANN. § 3.001 (Vernon 1998).

Martha Foreman Parker met her burden to show by clear and convincing evidence that the Tram Road property was her separate property because Jim Parker relinquished his claim to the property as his separate property under the inception of title doctrine when he assigned his rights in the contract for deed to Martha Foreman.

■■■ Jim Parker argues that he and Martha Foreman Parker entered into an oral agreement that, once his problems with the IRS were resolved, she would convey the property to him. Martha Parker offered no evidence regarding an oral agreement to convey the property to Jim Parker. She was never asked if such an agreement existed during either direct or cross-examination.

■■■ Conceding that a contract for land must generally conform to the statute of frauds, Parker argues that this oral agreement is enforceable in equity under the partial performance doctrine. Under the doctrine of partial performance as applied to the statute of frauds, an oral contract for the purchase of real property is enforceable if the purchaser: (1) pays the consideration; (2) takes possession of the property; and (3) makes permanent and valuable improvements on the property with the consent of the seller or, without such improvements, other facts are shown that would make the transaction a fraud on the purchaser if the oral contract was not enforced. *Boyert v. Tauber,* 834 S.W.2d 60, 63 (Tex.1992), *citing Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286, 289–90 (1957); *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921). These steps are seen as sufficient evidence of the agreement because they provide affirmative corroboration of the agreement by both parties to the agreement. *Boyert,* 834 S.W.2d at 63, *citing Francis v. Thomas,* 129 Tex. 579, 106 S.W.2d 257, 260 (1937); *Hooks,* 229 S.W. at 1117.

■■■ The doctrine of partial performance is an equitable exception to the

statute of frauds. *See Elizondo v. Gomez,* 957 S.W.2d 862, 864 (Tex.App.-San Antonio 1997, pet. denied). However, it is well settled that to receive equity, a party must do equity. *Houston Lighting & Power Co. v. Dickinson Indep. Sch. Dist.,* 641 S.W.2d 302, 308 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.), *citing Harrison v. Vines,* 46 Tex. 15, 23 (1876). Jim Parker testified that he assigned his interest in the Tram Road property to Martha Foreman until his problems with the IRS were resolved to shield the property from a tax lien. When Parker transferred the property to Martha Foreman, he was still negotiating with the IRS as to the amount of tax liability. Parker testified that he told the IRS about the property, but was told by an IRS official that he need not list the property on the disclosure forms as an asset since the property was not in his name. Jim Parker did not testify as to whether or not he disclosed to the IRS that he had an oral agreement with Martha Parker to convey the property to him once he had settled his problems with the agency. Whether or not the assignment was fraudulent as to the IRS is not an issue for this Court. However, Jim Parker's intent in transferring the property to Martha Foreman was clearly an attempt to shield the property from a possible tax lien. A grantor who conveys his property for the purpose of shielding the property from liability to future creditors, when the purpose of such a conveyance is not to divest the grantor of beneficial interest, should not receive the aid of the courts against his grantee. *See Letcher v. Letcher,* 421 S.W.2d 162, 168–69 (Tex.Civ.App.-San Antonio 1967, writ dism'd), *citing Lott v. Kaiser,* 61 Tex. 665 (1884). Public policy considerations demand that we refuse equitable relief and leave the parties where they have placed themselves.

The evidence is sufficient to support the trial court's finding that the Tram Road property is Martha Foreman Parker's separate property. We overrule Jim Parker's first and second points of error.

In the third and fourth points of error, Jim Parker complains that there is no evidence, or in the alternative, factually insufficient evidence to support the trial court's award of $50,000 to Martha Parker as a part of a just and right division of property.

When the trial court does not specifically set out its findings, we presume that the court has made appropriate findings to support its judgment and we look to the reporter's record for evidence to support the finding, using the appropriate standards of review as discussed under points of error one and two.

Martha Parker contends there is ample evidence to support the trial court's award of $50,000. She contends that Jim Parker has devalued his business assets through questionable business dealings with his long-time business associate, Allen Thomason.

The evidence shows that, from the insurance proceeds paid for the fire that occurred on the Tram Road property, Jim Parker took the $125,000 paid for contents coverage and the $14,000 paid for living expenses and started a business known as Lou–Tex Equipment Corporation. He established this business in January 1992, which was after his marriage to Martha Parker. Jim Parker had sole control over Lou–Tex, owned 100% of its stock, and was its sole investor and incorporator. This business was located on eleven acres of land along Interstate 10. On this property was a metal building, an office, and a large inventory of equipment for sale. The purchase price for the eleven acres was $175,000, and Monroe Motors, Inc. held a deed of trust and first lien on the property.

On November 1, 1993, the same date the court conducted a hearing on a motion for temporary orders restraining the parties from disposing or encumbering any property, Jim Parker signed a note and security agreement to Thomason for $1.2 million for alleged cash advances over a period of time. He testified that there were no

contemporaneous writings to support the debt owed to Thomason because the money had been loaned in a series of "handshake deals." Even though all of Lou–Tex's inventory was pledged against the $1.2 million note, Jim Parker did not list this note as an outstanding debt on his 1993 Lou–Tex corporate tax return nor on any later returns. Jim Parker claimed he paid $1 million on the $1.2 million note.

On September 2, 1994, Thomason acquired the first lien on the business property from Monroe Motors, Inc., and four days later Jim Parker received notice of default from Thomason's attorney and signed over the land and building to Thomason on the same day. This was an agreed foreclosure with no time given to cure any defaults. Jim Parker's divorce attorney prepared the foreclosure papers, and the transfer of the property occurred in his office. The documents transferring the property from Lou–Tex to Thomason were never recorded. In January 1995, following the foreclosure in September 1994, Jim Parker listed the property for sale for the amount of $350,000.

A new company, Citadel, took over Lou–Tex at the same location and showed over $2 million in sales in the first fifteen months. Thomason testified that he owns 100% of the stock in Citadel, and Parker testified that he was simply an employee of the new company, performing the same job functions as those he had performed for Lou–Tex. But then there was a fire on the Citadel property, as a result of which approximately $640,000 was claimed against insurance policies.

Martha Parker contends that Jim Parker could have paid $16,000 on the note to Monroe Motors, Inc. and avoided the foreclosure, but did nothing. Jim Parker denies that his transactions with Thomason were an attempt to defeat any claim Martha Parker may have had to any of the property and that there is no basis upon which the trial court should have awarded $50,000 to Martha Parker. However, after the execution of all of the papers by Jim Parker to Thomason (while the divorce was pending), Jim Parker no longer had the business which he had started with $139,000 in community assets.

In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Griffin Indus., Inc. v. Thirteenth Court of Appeals,* 934 S.W.2d 349, 355 (Tex.1996). The trial court, acting as the fact finder, is exclusively in a position to observe the witnesses and evaluate their testimony and credibility. *Id.* After reviewing the evidence, we find that the evidence produced at trial was sufficient to support the trial court's award of $50,000 to Martha Parker.

The third and fourth points of error are overruled.

In the last point of error, Jim Parker contends that the trial court erred by not dividing the personal property as the parties had testified during the trial of the case.

During a conference in chambers between the parties, Jim Parker requested specific items of property which he contended were his separate property. There was no record made of the proceedings in chambers. Following the conference, Jim Parker made a bill of exceptions to the ruling of the court, complaining that he had requested that the trial court make a ruling on the described property and that the trial court failed to so. We have no record of a request for a ruling or the trial court's response to the request. The record contains no sworn testimony and consists only of argument of counsel. Furthermore, Jim Parker fails to point this Court to any portion of the record where he testified as to the character of the property he claims as separate property. There is nothing for us to review.

The judgment of the trial court is affirmed.