TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-08-00136-CV




Jose Fernandez Galan Palau, Appellant

v.

Flor de Maria Navarro Sanchez, Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-FM-06-002234, HONORABLE DARLENE BYRNE, JUDGE PRESIDING


 
M E M O R A N D U M O P I N I O N

                        This is an appeal from a final divorce decree dissolving the marriage of Appellant
Jose Fernandez Galan Palau (“Galan”) and Appellee Flor de Maria Navarro Sanchez (“Navarro”). 
Galan raises several issues challenging pre-trial rulings and the final divorce decree. Because we
find no error in the trial court’s determinations, we affirm the trial court’s judgment.

BACKGROUND Galan and Navarro were married in 1950.


 Navarro filed for divorce in Mexico in
2003, alleging that Galan had committed adultery. In her divorce petition, Navarro sought thirty
percent of “the value of the goods acquired by [Galan] during the marriage.” The Mexico court
denied Navarro’s petition for divorce in February 2006, concluding that Navarro failed to prove that
Galan committed adultery. Because the court denied the divorce, it also denied Navarro’s request
to receive thirty percent of the goods acquired by Galan during the marriage. Navarro appealed the
judgment but then officially abandoned her appeal on May 3, 2006. The Mexico court dismissed the
appeal on May 4, 2006.
                        On the same day, Navarro filed a petition for divorce in Texas.


 On May 23, 2006,
Galan filed a petition for divorce in Mexico. In the Texas lawsuit, the parties served discovery
requests on each other. On April 16, 2007, Navarro filed a motion to compel Galan to respond to
her discovery requests. After a hearing, the trial court granted the motion, finding that Galan had
“wholly failed to respond or to object to any of [the] properly served discovery requests” and “wholly
failed to complete and exchange his Sworn Inventory and Appraisement.” The trial court ordered
Galan to provide the documents by a certain date and to pay the attorney’s fees Navarro incurred in
bringing the motion.
                        On May 10, 2007, Navarro filed a second motion to compel and for sanctions after
Galan failed to comply with the court’s previous order. At a hearing on the motion on May 17, 2007,
Galan’s counsel requested thirty more days to respond to the discovery requests. The trial court
granted the request but stated: “This [order] needs to be complied with and not before the Court
again. And if it is [before the court again], then I would certainly encourage significant sanctions.”
                        After thirty days passed and Galan still had not complied with the trial court’s order,
Navarro filed a third motion to compel and for sanctions on June 19, 2007. The trial court held a
hearing on the motion and found that Galan failed to comply with the trial court’s order. As
sanctions, the trial court ordered that Galan was prohibited from offering any documentary evidence
in support of his separate-property claims unless the evidence was produced prior to July 19, 2007,
the day the order was signed. The trial court also ordered Galan to pay: (1) Navarro’s discovery
expenses; (2) the attorney’s fees Navarro incurred in bringing the current and previous motions to
compel; and (3) the cost of the transcript of the previous hearing.
                        Meanwhile, Navarro filed a motion for temporary orders, and the trial court granted
the motion, awarding Navarro temporary support and interim attorney’s fees. The trial court also
ordered Galan to pay the property taxes on two of the couple’s Austin properties and the mortgage
payments on another. 
                        On July 30, 2007, Navarro filed a motion to enforce the trial court’s July 19, 2007
order and motion for sanctions. After a hearing, the trial court found that Galan had not complied
with the July 19, 2007 order. The trial court ordered Galan to pay the previously ordered monetary
sanctions to Navarro by September 4, 2007, and to respond to Navarro’s discovery requests by
August 31, 2007.
                        On August 14, 2007, Navarro filed a motion to compel depositions and for sanctions. 
After a hearing, the trial court denied Navarro’s motion for sanctions but granted her motion to
compel depositions. The trial court ordered, among other things, that Galan be deposed on
September 4, 2007. Galan did not appear for his deposition as ordered. 
                        On September 4, 2007, Navarro filed a Motion for Sanctions for Violation of Court
Orders, alleging that Galan violated the court’s orders that he appear for his deposition and respond
to discovery requests. At a hearing on a different motion on September 10, 2007, the trial court
ordered that Galan appear for his deposition on September 18, 2007. Galan did not appear for his
deposition as ordered. On September 27, 2007, the trial court held a hearing on Navarro’s Motion
for Sanctions for Violation of Court Orders. The court found that Galan failed to comply with four
court orders by not responding to discovery requests and not paying monetary sanctions. The court
further sanctioned Galan, ordering that he was prohibited from offering any evidence regarding his
separate-property claims unless the evidence was produced prior to the close of discovery on
September 21, 2007. In a separate order, the trial court also found that Galan failed to appear for
two depositions and ordered him to appear on October 2, 2007. The court further ordered that if
Galan did not appear for his deposition, he would be prohibited from offering any evidence of
affirmative claims. 
                        When Galan arrived with his counsel for his deposition on October 2, 2007, a process
server served him with a motion for enforcement of previous court orders by contempt, alleging that
he had not responded to discovery requests, paid monetary sanctions, or appeared for depositions as
ordered. Because the motion requested that Galan be jailed for noncompliance, Galan claimed a
Fifth Amendment right to remain silent and left without testifying. 
                        On October 9, 2007, Galan filed a pre-trial writ of habeas corpus, arguing that he was
entitled to refuse to testify at his deposition based on his Fifth Amendment right. At a hearing on
the motion, Navarro offered to withdraw her request for jail time with prejudice as long as Galan
appeared for his deposition on October 17, 2007, and Galan agreed. Accordingly, the trial court
ordered Galan to appear and testify at his deposition on October 17, 2007. At the same hearing, the
trial court considered another motion to compel filed by Navarro. The trial court granted the motion
and sanctioned Galan for his failure to respond to Navarro’s second set of interrogatories by ordering
that Galan’s experts were prohibited from testifying as to any impressions or opinions that had
not been disclosed as of the date of the hearing. Galan did not appear for his deposition on
October 17, 2007, claiming that he was ill and under doctor’s orders to stay in bed.



                        On November 5, 2007, the trial court heard pre-trial motions, including a motion for
sanctions filed by Navarro. The trial court granted the motion, finding that Galan had failed to
comply with multiple court orders requiring him to respond to discovery requests and appear for his
deposition. As sanctions, the trial court ordered that Galan was prohibited from offering evidence
of any affirmative claims at trial, including his separate-property claims.
                        The case went to trial on November 6, 2007. At the close of trial, the trial court
granted the divorce on grounds of insupportability and adultery and ordered that Navarro receive
62.5 percent of the community estate and Galan receive the remaining 37.5 percent of the community
estate. In addition, the trial court ordered Galan to pay 62.5 percent and Navarro to pay 37.5 percent
of the attorney’s fees incurred at trial. The trial court also ordered Galan to pay attorney’s fees for
any appeals brought from the trial court’s final judgment. 
                        On November 15, 2007, after the trial court had issued its ruling but before it had
entered its final divorce decree, UBS Financial Services Inc. (“UBS”) filed an interpleader action. 
UBS was a disinterested stakeholder who maintained two investment accounts that had been claimed
by both Navarro and Galan.
                        On the following day, November 16, 2007, the trial court entered its final divorce
decree. The decree awarded the two investment accounts maintained by UBS to Navarro. The trial
court issued its findings of fact and conclusions of law on December 21, 2007. Galan filed a notice
of appeal on February 13, 2008. 
                        On March 31, 2008, the trial court held a hearing regarding UBS’s interpleader action. 
After hearing UBS’s arguments, the trial court granted UBS’s petition and ordered that UBS transfer
the two investment accounts into the registry of the court. The trial court also ordered that UBS be
discharged from the suit and that Navarro and Galan be enjoined from taking any action against UBS
regarding its management of the accounts. 
                        On April 29, 2008, the Mexico court handling Galan’s divorce suit granted Navarro
and Galan a divorce. On April 30, 2008, Banc of America Investment Services, Inc. (“Bank of
America”) filed an interpleader action in Texas, alleging that it managed an investment account to
which Navarro and Galan had made rival claims. The trial court granted Bank of America’s petition
on May 13, 2008, and discharged Bank of America from the suit. On June 12, 2008, Galan filed a
second notice of appeal from the final divorce decree.

DISCUSSION 
                        Galan raises five issues on appeal, contending that: (1) this case was rendered moot
by the final Mexico judgment; (2) the trial court erred in denying Galan’s plea in abatement; (3) the
trial court erred in imposing sanctions prohibiting Galan from offering evidence as to his separate-property claims; (4) the trial court erred in characterizing the property involved in the divorce as
community property; and (5) the trial court erred in issuing fifty-three of its findings of fact and in
denying Galan’s request for findings of fact and conclusions of law regarding his and Navarro’s
separate property.


 
                        We address each of Galan’s issues separately below.

Mootness
                        Galan argues that an April 29, 2008 Mexico judgment granting Galan and Navarro
a divorce rendered this appeal moot. Galan concedes that the final divorce decree in the Texas case
was issued on November 16, 2007, five months before the Mexico judgment was issued, and he does
not dispute that the language or content of the Texas judgment indicates that the judgment is final. 
Rather, he argues that Bank of America’s interpleader action, which was filed in the Texas case after
the trial court issued the divorce decree, rendered the divorce decree interlocutory and that the
subsequent order granting Bank of America’s interpleader on May 13, 2008, became the final Texas
judgment. We disagree. 
                        A judgment is final when it disposes of all claims and all parties, regardless of its
language. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 192-93, 200 (Tex. 2001). A judgment
that determines all the equities or substantial merits of the case is not rendered interlocutory even
though further proceedings may be necessary to execute the judgment or an incidental matter still
remains to be settled. See Ferguson v. Ferguson, 338 S.W.2d 945, 947 (Tex. 1960) (quoting
Hargrove v. Insurance Inv. Corp., 176 S.W.2d 744 (Tex. 1944)); Beavers v. Beavers, 651 S.W.2d
52, 53-54 (Tex. App.—Dallas 1983, no writ). 
                        Here, the two parties involved in the Texas divorce action were Galan and Navarro. 
Bank of America simply managed an account that had already been divided between the parties in
the final divorce decree. Specifically, the November 2007 Texas divorce decree awarded ownership
of the Bank of America account to Navarro but awarded $550,000 of the funds in the account to
Galan. On April 2, 2008, the trial court ordered Galan to transfer the funds in the Bank of America
account into the registry of the court.


 According to Bank of America’s petition, which was filed on
April 30, 2008, Galan had not yet complied with the trial court’s April 2, 2008 order. Bank of
America’s petition also pointed out that Galan had made at least one attempt to transfer funds in the
account during the divorce proceedings. Accordingly, with knowledge that an appeal of the trial
court’s divorce decree was pending in this Court, Bank of America filed an interpleader action
requesting that Bank of America be removed as manager of the account. The trial court granted the
interpleader on May 13, 2008. 
                        The property at issue in the interpleader action was disposed of along with all parties
and claims in the November 2007 divorce decree. Bank of America’s later-filed interpleader action
did not affect any part of the divorce decree. Thus, the divorce decree was a final judgment, and the
interpleader action was merely an incidental matter that remained to be settled after the judgment
was rendered. See Ferguson, 338 S.W.2d at 947; Beavers, 651 S.W.2d at 53-54. We therefore reject
Galan’s argument that the later-issued Mexico judgment rendered this appeal moot, and we
overrule this issue.


 

Plea in Abatement
                        Galan contends that the trial court erred in denying his plea in abatement. 
Specifically, he argues that Navarro did not establish the domiciliary and residency requirements
necessary to maintain a suit for divorce. See Tex. Fam. Code Ann. § 6.301 (West 2006). 
Section 6.301 states that a suit for divorce may not be maintained in Texas unless, at the time suit
is filed, either the petitioner or the respondent has been: (1) a domiciliary of Texas for the preceding
six-month period; and (2) a resident of the county in which suit is filed for the preceding ninety-day
period. See id. 
                        Section 6.301 is not jurisdictional, but it is akin to a jurisdictional provision in that
it controls a party’s right to maintain a suit for divorce and is a mandatory requirement that the
parties cannot waive. See Reynolds v. Reynolds, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no
pet.); Oak v. Oak, 814 S.W.2d 834, 837 (Tex. App.—Houston [14th Dist.] 1991, writ denied). 
                        The residency and domiciliary requirements in section 6.301 are properly attacked
by a plea in abatement. See Reynolds, 86 S.W.3d at 277; Svensen v. Svensen, 629 S.W.2d 97, 98
(Tex. App.—Dallas 1981, no writ). We review a trial court’s ruling on a plea in abatement under
an abuse of discretion standard. See Dolenz v. Cont’l Nat’l Bank, 620 S.W.2d 572, 575 (Tex. 1981);
Molano v. State, 262 S.W.3d 554, 558 (Tex. App.—Corpus Christi 2008, no pet.). An abuse of
discretion occurs when a trial court acts without reference to any guiding rules and principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). In the case of a plea
in abatement, a trial court abuses its discretion if it acts arbitrarily or unreasonably in its ruling. See
Dolenz, 620 S.W.2d at 575.
                        In Navarro’s original divorce petition, which she filed on May 4, 2006, she alleged
that she had been a domiciliary of Texas for the preceding six-month period and a resident of Travis
County for the preceding ninety-day period. In the plea in abatement that Galan filed the day before
trial, he alleged that Navarro’s statements regarding her domicile and residence were untruthful. As
proof of his claim, he attached to his plea in abatement portions of a deposition of Navarro and
Galan’s daughter, in which the daughter stated that Navarro traveled back and forth from Texas to
Mexico during the six months before Navarro filed the divorce petition. Galan also attached a copy
of Navarro’s border-crossing card and copies of immigration documents explaining that the visa with
which she entered the United States was issued for Mexican citizens who were temporarily visiting
the United States as tourists. In addition, Galan attached an affidavit in which Navarro stated: “I
am a Mexican citizen. I am domiciled in Texas but I have not sought permanent residency status in
the United States.”
                        At a hearing on Galan’s plea in abatement and various other motions, the trial court
asked Navarro’s counsel for a response to Galan’s plea. Navarro’s counsel stated:
[Navarro] has already testified that she was a resident of the State of Texas six
months prior to the filing of this divorce petition and in Travis County a resident of
the 90-day divorce petition [sic], that was established at the commencement of the
hearing before Judge Dietz back in May ‘06. She will testify to those facts again
when she takes the witness stand.


The trial court denied Galan’s plea in abatement, finding that the plea was untimely
under a local rule.


 
                        Even if we were to assume that the trial court erred in denying Galan’s plea in
abatement, the proper remedy in sustaining a plea in abatement is not to dismiss the suit but to retain
it on the docket so that it may be revived when the impediment is removed. See Svensen,
629 S.W.2d at 98; Black’s Law Dictionary 1269 (9th ed. 2009) (“A defendant who successfully
asserts a plea in abatement leaves the claim open for continuation in the current action or reassertion
in a later action if the defect is cured.”). Thus, even if the documents attached by Galan to his plea
in abatement established that Navarro did not satisfy the domiciliary and residency requirements at
the time she filed her divorce petition, nothing would have stopped her from satisfying the
requirements at the time the plea in abatement was heard so as to cure any defect in her petition. At
trial on the day following the hearing in November 2007, Navarro testified that she had been living
at a house in Austin since September 2005. She testified that she went back and forth from Austin
to Mexico “just for a few days” right after she moved to Austin but that it had been a long time since
she traveled back to Mexico. She also testified that it had been her intent since she moved to Austin
in September 2005 to live in Austin.
                        During cross-examination, Navarro conceded that her visa was a “tourist visa” and
that she had not sought permanent residency status in the United States. She also testified that at the
time she filed her visa application, she informed government officials that her residence was in
Mexico. However, section 6.301 requires only that a petitioner be a domiciliary of Texas and a
resident of the county in which the suit is filed, not that she be a citizen of the United States or carry
a certain type of visa. See Tex. Fam. Code Ann. § 6.301. Black’s Law Dictionary defines
“domiciliary” as “[a] person who resides in a particular place with the intention of making it a
principal place of abode.” Black’s Law Dictionary 559 (9th ed. 2009). Navarro testified that she
had lived in a house in Austin since September 2005 and that at the time of moving there, she
intended to live there. Thus, she satisfies the definition of “domiciliary.” Black’s Law Dictionary
defines “resident” as “[a] person who lives in a particular place” or “[a] person who has a home in
a particular place.” Id. at 1424. Regarding the second definition of “resident,” Black’s Law
Dictionary adds: “a resident is not necessarily either a citizen or a domiciliary.” Id. As previously
stated, Navarro testified that she had lived in a house in Austin since September 2005. She therefore
also satisfies the definition of a “resident.” 
                        Given all of the circumstances, we conclude that the trial court did not abuse its
discretion in denying Galan’s plea in abatement, see Dolenz, 620 S.W.2d at 575, and that in any case,
Navarro satisfied the domiciliary and residency requirements at the time of trial. Accordingly, we
overrule this issue. 

Sanctions
                        Galan asserts that the trial court erred in imposing sanctions prohibiting him from
offering evidence at trial as to his separate-property claims. He contends that the trial court erred
in imposing the sanctions because: (1) there was not a pending motion for sanctions at the time the
sanctions were imposed; (2) he was not given notice or a hearing before the sanctions were imposed;
(3) he did in fact appear for his October 2, 2007 deposition but properly invoked his Fifth-Amendment right to remain silent; (4) at the time the trial court imposed the sanctions, it had no
information regarding previously imposed sanctions; and (5) an October 15, 2007 order discharged
Galan from all previous orders imposing sanctions. 
                        A trial court’s ruling on a motion for sanctions is reviewed for an abuse of discretion. 
Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004). The test for an abuse of discretion is not
whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial
court’s action, but “whether the court acted without reference to any guiding rules and principles.” 
Id. at 838-39. The trial court’s ruling should be reversed only if it was arbitrary or unreasonable. 
Id. at 839. A trial court’s discretion is limited by the requirements that sanctions be “just”
and comport with due process. See Tex. R. Civ. P. 215.2(b); TransAmerican Natural Gas Corp.
v. Powell, 811 S.W.2d 913, 917 (Tex. 1991). For sanctions to be just, there must be a direct
relationship between the offensive conduct and the sanction, and the sanction must not be excessive. 
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 849 (Tex. 1992). 
                        Here, the hearing at which the sanctions prohibiting Galan from offering evidence
supporting his separate-property claims (“the final sanctions”) were imposed took place on
November 5, 2007, the day before trial. At that point in the pre-trial proceedings, the trial court had
already warned Galan on multiple occasions to comply with discovery requests and had imposed
sanctions for his failure to do so. Specifically, after an April 2007 hearing on a motion to compel,
the trial court found that Galan had “wholly failed to respond or to object to any of [the] properly
served discovery requests” and “wholly failed to complete and exchange his Sworn Inventory and
Appraisement.” The trial court ordered Galan to provide the documents by a certain date and to pay
the attorney’s fees Navarro incurred in bringing the motion. At a hearing on Navarro’s second
motion to compel and motion for sanctions in May 2007, Galan’s counsel requested thirty more days
to respond to the discovery requests. The trial court granted the request but stated: “This [order]
needs to be complied with and not before the Court again. And if it is [before the court again], then
I would certainly encourage significant sanctions.”
                        In July 2007, the trial court held a hearing on Navarro’s third motion to compel and
motion for sanctions and found that Galan failed to comply with the trial court’s previous order. As
sanctions, the trial court prohibited Galan from offering any documentary evidence in support of his
separate-property claims unless the evidence was produced prior to July 19, 2007, the day the
order was signed. 
                        At a hearing on August 24, 2007—this time regarding a motion for enforcement of
the trial court’s July 19, 2007 order, motion to compel depositions, and motion for
sanctions—Navarro’s counsel informed the trial court that Galan had not yet complied with previous
court orders to make mortgage payments, pay property taxes, and pay Navarro temporary support
and interim attorney’s fees. Navarro’s counsel requested that the trial court create a new deadline
for Galan to comply, and the trial court declined, stating:
 
I’m telling you that moving the date is just not very effective. And so—I’m not
inclined to do that, because I don’t think that’s the way to enforce my order. I think
the way to enforce my order is to get his attention and make sure he understands that
there are consequences to the failure to follow a court order. And moving the date
isn’t a consequence that I think makes sense. [Galan’s counsel], you need to advise
your client . . . that it is very possible that he will go to jail for violation of this
court’s order and that I’m very serious about that. I don’t know that I’ll put him in
jail. I’m not making a decision about that yet. I’m telling you that I don’t think that
moving the date makes a lick of sense. He’s already had a date. It’s come and gone. 
And I’m very serious about enforcing my own court orders, and I will very much
consider putting him in jail if he doesn’t comply with it.


After the hearing, the trial court denied Navarro’s motion for sanctions but granted her motion to
compel depositions. The trial court ordered, among other things, that Galan be deposed on
September 4, 2007. Galan did not appear for his deposition as ordered.
                        The next order regarding a deposition setting for Galan occurred at a hearing on
September 10, 2007. At the hearing, the trial court ordered that Galan appear for his deposition on
September 18, 2007. Galan did not appear for his deposition as ordered. At a subsequent hearing
on September 27, 2007, the trial court found that Galan failed to comply with four court orders by
not responding to discovery requests and not paying monetary sanctions. The court
further sanctioned Galan, ordering that he was prohibited from offering any evidence regarding his
separate-property claims unless the evidence was produced prior to the close of discovery on
September 21, 2007. In a separate order, the trial court also found that Galan failed to appear for
two depositions and ordered him to appear on October 2, 2007. The court further ordered that if
Galan did not appear for his deposition on October 2, 2007, he would be prohibited from offering
any evidence of his affirmative claims.
                        When Galan arrived with his counsel for his deposition on October 2, 2007, he was
served with a motion for enforcement of previous court orders by contempt, alleging that he had not
responded to discovery requests, paid monetary sanctions, or appeared for depositions as ordered. 
Because the motion requested that Galan be jailed for noncompliance, Galan claimed a
Fifth Amendment right not to incriminate himself and left without testifying.
                        At an October 15, 2007 hearing regarding various motions, the trial court sanctioned
Galan for his failure to respond to Navarro’s second set of interrogatories by ordering that Galan’s
experts were prohibited from testifying as to any impressions or opinions that had not been disclosed
as of the date of the hearing. At the same hearing, Navarro offered to withdraw her request for jail
time with prejudice as long as Galan appeared for his deposition on October 17, 2007, and Galan
agreed. Accordingly, the trial court ordered Galan to appear and testify at his deposition on
October 17, 2007. One of the motions for which the hearing was held was a motion for sanctions
filed by Navarro. The trial court deferred its ruling on the motion, stating:
 
With regard to the pending motion for sanctions, I’m going to remain that—keep that
under advisement until after the October 17[th] deposition. 
 
If he does not give his deposition . . . on October 17th, I will take up that motion for
sanctions; and if he does but it’s incomplete in some way or something, I’ll, again,
deal with that at that time. But you should, as you prepare and since your deadline
for preparation of documents and exchange of information and so forth has been
extended until Friday, you should both just continue to assume that all the issues that
have always been in the case are still in the case and operate accordingly. Better to
over prepare than to under prepare. And I appreciate that this might create some
inconvenience to you, but I’m not going to decide that till I know whether or not he
cooperates at his deposition.
 
And I’ve said before and I’ve made rulings before about whether or not certain
evidence is going to be able to be offered and certain people will be allowed to testify
and so forth, depending on whether or not they give depositions and so on. And I’m
not changing any of those rulings. I just want to keep my options open for further
sanctions, if necessary, in the event that he does not cooperate on October 17th. But
that one will stay pending.
Galan did not appear for his deposition on October 17, 2007, claiming that he was ill and under
doctor’s orders to stay in bed.
                        The next hearing was on November 5, 2007, during which the trial court imposed the
final sanctions that Galan complains about on appeal. The district judge who presided at the hearing,
Judge Byrne, had not presided at any of the previous hearings. At the hearing, Navarro’s counsel
explained to Judge Byrne that other district judges had ordered Galan to appear for his deposition
four times but that he still had not done so. Galan’s counsel explained that Galan appeared on the
third date on which he was ordered to appear, October 2, 2007, but refused to answer questions
because, upon his arrival, a process server served him with a show-cause order that threatened jail
time if he did not appear in court and explain why he had not made certain payments mandated by
the court. Galan’s counsel stated that he had advised Galan to assert his Fifth Amendment right to
remain silent. Judge Byrne stated that she did not understand why Galan could not have answered
questions about the identification and valuation of property related to the divorce and then assert his
Fifth Amendment right only when he was asked questions about his failure to pay court-ordered amounts of money. Galan’s counsel stated that he felt that Galan could assert the privilege
for all questions.


 
                        Navarro’s counsel also explained to Judge Byrne that the most recent order, which
was issued by Judge Livingston on October 15, 2007, ordered Galan to appear for his deposition on
October 17, 2007. She informed Judge Byrne that Galan did not appear as ordered on October 17,
claiming he was ill. Judge Byrne focused on Judge Livingston’s October 4, 2007 order


 and the
pending motion for sanctions, which led to the following exchange between the trial court and
Galan’s counsel:
 
Court:The order reads specifically as follows: The Court further orders that
if respondent, Mr. Galan, fails to appear for his oral deposition on
October 2nd, 2007 in the offices of Gray & Becker at 9:00 a.m. that
he will be sanctioned as follows: Respondent Galan is prohibited
from offering any evidence, whether or not produced, of any
affirmative claim in this matter. What is your response?
 
Counsel:Your Honor, that was heard by—that’s a motion that’s being carried
by the court, it was heard by Judge Livingston when [Navarro’s
counsel] filed. That was the hearing in which I asked [Navarro’s
counsel] to withdraw the show cause and he would appear
immediately to testify. And Judge Livingston after hearing all of the
argument, decided not to rule on it. So there is no order as of yet. As
of that request we actually had a hearing in front of Judge Livingston
there and we—
 
Court:You don’t have a ruling. Okay. The Court grants the sanctions and
that Mr. Galan will be prohibited from offering any evidence of any
affirmative claim in this matter for his violation of the October 2nd,
2007 [sic] order for failing to appear and answer questions at a
deposition.


                        In a written order memorializing the trial court’s verbal ruling, the trial court found
that: (1) monetary sanctions were imposed on Galan on May 10, 2007 for failure to answer written
discovery; (2) sanctions were imposed on Galan on July 19, 2007, prohibiting him from offering any
documentary evidence as to his separate-property claims if the evidence was not produced by
July 19, 2007; (3) sanctions were imposed on Galan again on October 4, 2007, prohibiting him from
offering any evidence of his separate-property claims if the evidence was not produced by
September 21, 2007; (4) Galan was ordered to appear for his deposition on four separate dates
but failed to appear for any of them; (5) Galan was ordered to appear for his deposition on
October 2, 2007, and was warned that if he failed to appear, he would be prohibited from offering
any evidence of any of his affirmative claims; (6) Galan failed to appear and be deposed on
October 2, 2007; and (7) lesser sanctions had been imposed on Galan but failed to result in his
compliance with court orders. Accordingly, the trial court ordered that Galan was “hereby
sanctioned for abuse of the discovery process and for failure to appear for oral deposition on four
separate dates as ordered, said sanctions to be a prohibition against [Galan] offering any evidence
as to any affirmative claim at trial, including his claim of separate property upon which [he] has
the burden of proof.” 
                        In his first argument regarding the final sanctions, Galan contends that there was not
a pending motion for sanctions at the time the final sanctions were imposed. Galan argues that a
First Amended Motion for Sanctions filed by Navarro was withdrawn by Navarro’s counsel at a
hearing on October 4, 2007, and that it was also stricken by the trial court, thus leaving no pending
motion for sanctions. However, Galan does not accurately depict what occurred at the hearing. 
According to a transcript of the hearing, Galan objected to Navarro’s first amended motion for
sanctions, claiming he did not have enough notice that the motion would be addressed at the hearing. 
The trial court sustained Galan’s objection but noted that there was no objection to Navarro’s
original motion for sanctions and that there was no reason why the court could not hear the original
motion at that time. Navarro’s counsel stated that she was withdrawing the amended motion and was
ready to proceed on the original motion. Galan’s counsel objected, stating that the original motion
became void as of the moment the amended motion was filed. The trial court overruled his
objection, stating that the amended motion no longer existed because it had been withdrawn and was
stricken for all purposes, thus leaving the original motion intact. The trial court then considered the
original motion.
                        Ultimately, the trial court stated that it would defer its ruling on the motion for
sanctions, taking it “under advisement,” until after it ruled on Navarro’s motion for summary
judgment. Thus, the motion for sanctions was still pending at the close of the October 4, 2007,
hearing. Accordingly, we reject Galan’s argument that there was no motion for sanctions pending
when the trial court imposed the final sanctions on November 5, 2007.
                        In his second argument, Galan asserts that he was not given notice or a hearing before
the final sanctions were imposed on November 5, 2007. However, Galan had considerable notice
that the final sanctions were a possibility and several hearings on the matter before the final
November 5, 2007 hearing. As we have already described in detail, Galan was repeatedly sanctioned
by the trial court throughout the pre-trial proceedings for his failure to answer discovery requests and
appear at his deposition. Sanctions regarding prohibitions on aspects of his separate-property claims
began at a hearing on July 19, 2007, at which the trial court sanctioned Galan by prohibiting him
from offering any documentary evidence in support of his separate-property claims unless the
evidence was produced by July 19, 2007. Galan was similarly sanctioned after a hearing on
September 27, 2007, at which the trial court prohibited him from offering any evidence of his
separate-property claims unless the evidence was produced by September 21, 2007. Also at the
September 27, 2007 hearing and in an order memorializing the trial court’s ruling at the hearing, the
trial court explicitly warned Galan that if he did not appear for his deposition on October 2, 2007,
he would be prohibited from offering any evidence of any of his affirmative claims.
                        At the November 5, 2007 hearing, the trial court learned that Galan had appeared for
his deposition on October 2, 2007, but had refused to answer questions, asserting his Fifth
Amendment right to remain silent based on a show-cause order served on him upon his arrival. The
trial court disagreed with Galan’s position that he could not have answered the questions relating
only to the property involved in the divorce proceedings, and the trial court found that Galan had not
appeared for his deposition as ordered. 
                        Given all of the hearings that the trial court conducted based on Galan’s failure to
follow court orders—including the hearing on November 5, 2007, when the final sanctions were
imposed—and considering the multitude of sanctions imposed on Galan and the explicit warnings
given to him by the trial court that he would be prohibited from offering evidence as to his separate-property claims if he did not comply with court orders, we reject Galan’s argument that he did not
receive notice and a hearing before the imposition of the final sanctions.


 
                        In his third argument, Galan contends that he should not have been sanctioned based
on his failure to testify at his October 2, 2007 deposition because he properly relied on his
Fifth Amendment right to remain silent in refusing to testify. However, Galan does not cite to any
legal authority in support of his argument. Accordingly, he waives this argument. See Tex. R. App.
P. 38.1(i). We also note that the trial court informed Galan on more than one occasion that he could
have answered questions relating to the identification of and valuation of property involved in the
divorce and asserted his Fifth Amendment right only when asked questions regarding his failure to
comply with court-ordered payments. In addition, the trial court did not impose the final sanctions
based solely on Galan’s refusal to testify on October 2. In imposing the sanctions, the trial court
recited each of the times that Galan was sanctioned for failure to answer discovery requests or failure
to appear at his deposition and specifically stated that he was sanctioned “for abuse of the discovery
process and for failure to appear for oral deposition on four separate dates as ordered.” Accordingly,
we reject this argument.



                        In his fourth argument, Galan asserts that Judge Byrne should not have imposed the
final sanctions because she was not the presiding judge at the previous hearings and had not
considered any evidence or arguments regarding previously imposed sanctions. However, the record
shows that Judge Byrne considered at least two previous orders that imposed sanctions involving
Galan’s affirmative claims. The transcript from the hearing held on November 5, 2007, shows that
Judge Byrne considered a July 19, 2007 order in which Galan was found to have failed to respond
to discovery requests and prohibited from offering any documentary evidence in support of his
separate-property claims unless the evidence was produced to Navarro before July 19, 2007. The
transcript also shows that Judge Byrne considered the October 4, 2007 order in which the trial court
found that Galan failed to appear for two court-ordered depositions, ordered him to appear on
October 2, 2007, and warned that he would be prohibited from offering any evidence of any of his
affirmative claims if he did not appear for his deposition on October 2, 2007. In addition, the order
Judge Byrne issued after the hearing indicated that she considered the entire record because the order
listed all of the previous sanctions imposed on Galan before the imposition of the final sanctions. 
                        We also note that Galan requested on April 30, 2007, that the trial court take judicial
notice of adjudicative facts in the case, including all documents presently in the court’s file, all
documents that would later become part of the court’s file, and all findings of fact and conclusions
of law that were issued in any orders or judgments in the case. Further, Galan does not cite to, and
we have not found, any legal authority for the proposition that a district judge operating within a
centralized, rotating docket system cannot issue a ruling on a motion if he or she did not preside over
previous pre-trial hearings or directly hear all of the same evidence that each of the previous district
judges heard. We therefore overrule this argument.


  
                        In his fifth argument, Galan contends that the trial court erred in imposing the final
sanctions because an October 15, 2007 order discharged Galan from all previous orders imposing
sanctions. We disagree with Galan’s characterization of the October 15, 2007 order. The order was
based on the trial court’s ruling at a hearing that took place the same day. At the hearing, the trial
court addressed a writ of habeas corpus filed by Galan regarding Navarro’s show-cause order and
her request in the order that Galan serve jail time for not complying with court orders. Navarro
offered to withdraw the request for jail time with prejudice as long as Galan appeared for his
deposition on October 17, 2007, and made all of the payments he had been ordered to make. The
trial court asked the parties if they could come to an agreement in which Galan agreed to appear for
his deposition if Navarro agreed to withdraw her request for jail time. The parties ultimately reached
an agreement that was memorialized in the following order:
 
Relief is GRANTED by agreement on [Galan’s] application for pre-trial writ of
habeas corpus. [Galan] is in all things discharged from the show cause order of
October 1, 2007, and the events and allegations contained therein. [Galan] shall
appear, be sworn in and testify at his deposition on October 17th 2007 at 9 a.m. at the
offices of Gray & Becker, subject to any privileges asserted. 


                        Galan contends in his brief that the order discharges him “not only from the
October 2nd 2007 order . . . but from all previous orders of sanctions referenced in Navarro’s Show
Cause Order.” His position seems to be that the order discharges all previous sanctions orders
because the previous orders were referenced in and attached to the show-cause order. Thus, he
appears to argue, when the trial court ordered that Galan be discharged from the show-cause order
and all events and allegations contained in the order, the trial court was also discharging him from
all the orders referenced in and attached to the order. However, such an interpretation is not
consistent with the language of the order or what occurred at the hearing. The language of the order
states that Galan was discharged from the show-cause order and its contents. The order states
nothing about discharging previous orders imposing sanctions. In addition, at no time in the hearing
did the trial court indicate that the agreement between the parties represented a discharge of all
previous orders imposing sanctions. The trial court indicated only that the agreement would dispose
of Galan’s writ of habeas corpus and require him to appear for his deposition on October 17, 2007. 
Further, at the end of the hearing, the trial court stated that it was keeping “the pending motion for
sanctions . . . under advisement until after the October 17 deposition.” As quoted previously, the
trial court also went on to state: 
 
And I’ve said before and I’ve made rulings before about whether or not certain
evidence is going to be able to be offered and certain people will be allowed to testify
and so forth, depending on whether or not they give depositions and so on. And I’m
not changing any of those rulings. I just want to keep my options open for further
sanctions, if necessary, in the event that [Galan] does not cooperate on October 17th. 


Because the record does not indicate that the October 15, 2007 order discharged Galan from all
previous orders imposing sanctions, we reject Galan’s argument. 
                        Having rejected all of Galan’s arguments regarding the trial court’s imposition of the
final sanctions, and considering Galan’s repeated refusal to comply with court orders despite
numerous threats of sanctions, opportunities to comply, and the imposition of lesser sanctions, we
conclude that the trial court did not abuse its discretion in imposing the final sanctions.


 See Tex.
R. Civ. P. 215.2(b); TransAmerican, 811 S.W.2d at 917; Cire, 134 S.W.3d at 838-39.
 
 
Characterization of Marital Property
                        Galan asserts that the trial court erred in characterizing the marital estate as
community property because there was no evidence, or insufficient evidence, that the estate was
community property. Galan contends that Navarro “failed to meet her burden” of proving that the
marital property “was not Galan’s separate property.” However, Navarro had no such burden. To
the contrary, all property possessed by either spouse during or on dissolution of marriage in Texas
is presumed to be community property. See Tex. Fam. Code Ann. § 3.003 (West 2006). To
overcome the community-property presumption, the spouse attempting to do so must present clear
and convincing evidence that the property is separate property. See id.; Boyd v. Boyd, 131 S.W.3d
605, 612 (Tex. App.—Fort Worth 2004, no pet.). We therefore review the trial court’s
characterization based on the clear and convincing evidence standard. See Tate v. Tate, 55 S.W.3d
1, 5 (Tex. App.—El Paso 2000, no pet.).
                        Here, based on sanctions that we have previously upheld in this opinion, Galan was
prohibited from offering any evidence showing that any of the property involved in the divorce was
his separate property. Because we have upheld the sanctions, we will not consider any of the offers
of proof Galan made as to his separate-property claims. Despite the ban on evidence of his separate-property claims, however, Galan contends that he established that much of the property involved in
the divorce was his separate property based on evidence that was not excluded by the ban:
specifically, portions of the petition for divorce that Navarro initially filed in Mexico in 2003 and
portions of Navarro’s testimony at trial. Galan quotes several parts of Navarro’s Mexico petition
in which she stated that she was married “under the regime of separate property” and that Galan was
the owner of the assets the couple acquired during their marriage. At trial, Galan’s counsel asked
Navarro to confirm that she made the statements in the Mexico petition, and she confirmed that she
made each statement. The following exchange then occurred:
 
Galan’s Counsel:As to what is listed in the petition, as to those items, is it your
understanding that at the time of the filing of the divorce
petition all the items that we have described belonged to
[Galan]? 
 
Navarro:Yes. 
 

Galan contends that the statements in Navarro’s Mexico petition and the statements she made at trial
establish by clear and convincing evidence that the property involved in the divorce was his separate
property. We disagree. 
                        In order to prove certain assets are separate property, a spouse must trace and clearly
identify the property claimed to be separate. See McKinley v. McKinley, 496 S.W.2d 540, 543 (Tex.
1973); Zagorski v. Zagorski, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied). “Tracing involves establishing the separate origin of the property through evidence showing
the time and means by which the spouse originally obtained possession of the property.” Zagorski,
116 S.W.3d at 316; In re Parker, 997 S.W.2d 833, 837 (Tex. App.—Texarkana 1999, pet. denied). 
Here, Galan has established only that Navarro stated that she and Galan were married under a
separate-property regime in Mexico and that at the time she filed a divorce petition in Mexico in
2003, she felt that all of the property acquired during the marriage was “owned” by Galan and
“belonged” to him. Galan points to no evidence admitted at trial establishing what a “separate-property regime” means under Mexican law. He also points to no evidence tracing the origins of
each piece of property. Rather, he contends that Navarro’s statements in her Mexico petition were
judicial admissions that the property was Galan’s separate property. A judicial admission is an
assertion of fact, not pled in the alternative, in the live pleadings of a party. See Holy Cross Church
of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001). However, the pleading that Galan refers
to is a petition from a divorce suit in Mexico in which the Mexico court determined that Navarro was
not entitled to a divorce. Galan does not cite to, nor have we found, any legal authority establishing
that a foreign pleading in a divorce suit that was resolved without granting a divorce constitutes a
live pleading in a Texas case.


 
                        Considering the lack of evidence in the record to rebut the community-property
presumption, we conclude that Galan did not prove by clear and convincing evidence that the
property involved in the divorce was his separate property. Accordingly, the trial court did not abuse
its discretion in characterizing the property as community property.

Sufficiency of Evidence Supporting Findings of Fact
                        Galan challenges fifty-three of the trial court’s findings of fact and argues that the trial
court erred in denying his request for findings of fact and conclusions of law regarding the
characterization and value of the separate property of Galan and Navarro.


 Forty-three of the
challenged findings relate to Galan’s failure to respond to discovery requests or pay monetary
sanctions. Galan makes the following one-sentence argument regarding the findings: “Those matters
all dealt with specific discovery disputes over which [Judge Byrne] did not preside and which
involved matters not considered at the pretrial or trial of the case.” However, like the first time
Galan made this argument in this appeal, he does not cite to, and we have not found, any legal
authority supporting the proposition that a district judge operating within a centralized, rotating
docket system cannot issue findings of fact based on the entire case if she did not preside over every
hearing in the case. Further, Galan specifically requested on April 30, 2007, that the trial court take
judicial notice of adjudicative facts in the case, including all documents presently in the court’s file,
all documents that would later become part of the court’s file, and all findings of fact and
conclusions of law that were issued in any orders or judgments in the case. Galan made the same
request—specifically, that the trial court “take judicial notice of its file”—at a pretrial hearing on
November 5, 2007, and the trial court stated that it would “be happy to take judicial notice of those
court orders in its file.” Because we find no support for Galan’s position, we reject his argument.



                          For another of the challenged findings—specifically, the finding that Navarro
satisfied the residence and domiciliary requirements necessary to bring a divorce suit in
Texas—Galan refers to his arguments in support of his first issue challenging the trial court’s denial
of his plea in abatement. Because we have already overruled that issue, we affirm the trial court’s
findings with respect to the issue. Similarly, for another subset of the challenged findings—those
regarding Galan’s failure to appear for depositions on three separate occasions—Galan refers to his
arguments in support of his third issue challenging the trial court’s imposition of sanctions
prohibiting Galan from offering evidence regarding his separate-property claims. Because we have
previously upheld the sanctions, we affirm the trial court’s findings with respect to that issue. 
                        Regarding the remaining four challenged findings of fact, Galan provides only a one-sentence argument and fails to cite to any legal authority. Accordingly, we conclude that he has
waived the arguments. See Taylor v. State, 293 S.W.3d 913, 917 (Tex. App.—Austin 2009, no pet.)
(“Brief, conclusory statements, unsupported by legal citations, are insufficient to sustain an
appellant’s complaint.”); see also Tex. R. App. P. 38.1(i) (requiring briefs to contain clear and
concise argument for contentions made and appropriate citations to authorities and record).
                        Galan also contends that the trial court erred in denying his request for findings of fact
and conclusions of law regarding “the characterization and value” of his and Navarro’s separate
property. However, the trial court did not issue findings of fact and conclusions of law regarding
the separate property of Galan and Navarro because the trial court determined that all of the property
was community property. Galan was prohibited from offering any evidence regarding his separate-property claims, and Navarro did not make any separate-property claims. Because the trial court
treated all the property as community property and there was no evidence of separate property, we
reject Galan’s argument. 
CONCLUSION
                        Having overruled each of Galan’s issues, we affirm the trial court’s judgment. 
                               
 
___________________________________________
                                                                        David Puryear, Justice
Before Justices Puryear, Pemberton and Onion*;
    Dissenting Opinion by Justice Onion
Affirmed
Filed: November 10, 2010
 
 
 
 
 
 


* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting
by assignment. See Tex. Gov’t Code Ann. § 74.003(b) (West 1998).