Ross J. **BOYERT** d/b/a the Ross Group, Petitioner,

v.

Laszlo N. **TAUBER** and Julian D. Pars; Consolidated Financial Trust, Respondents.

No. D–1885.

Supreme Court of Texas.

July 1, 1992.

E. Landers Vickery, Houston, for petitioner.

Roger Tehan Scully, II, Bethesda, Md., William Daniel Quarles, Washington, D.C., David L. Pybus and Melvin A. Dow, Houston, for respondents.

## OPINION

COOK, Justice.

This case presents two certified questions from the United States Court of Appeals for the Fourth Circuit. The questions, which require interpretation of the Real Estate Licensing Act (RELA), TEX. REV.CIV.STAT.ANN. art 6573a, § 20(b) (Vernon Supp.1992), are: (1) "whether parol evidence may be admitted to identify the broker to whom a commission is owed in an action to recover a real estate commission based on a document signed by the purchaser acknowledging a debt to 'outside brokers' but not providing a complete listing of their names"; and (2) "whether the doctrine of partial performance permits a broker to maintain an action for a real estate commission where the memorandum evidencing the agreement refers to 'outside brokers' but does not provide a complete listing of their names." We answer that neither parol evidence nor partial performance is sufficient in this situation.

The order of certification presents the following stipulated facts.

Early in 1987, Ross Boyert, a Texas real estate broker, read in the newspapers that an investor named Julian Pars had purchased a Texas office building. Seeking business, Boyert called Pars and offered his services in finding properties for [Pars to] purchase. Pars at that time represented himself as the head of a

private investment group looking for properties and asked Boyert to begin searching for suitable investment opportunities. In March 1987, Pars told Boyert that his equity partner was Dr. Laszlo N. Tauber, a well-known investor.

Boyert testified that in August of 1987, he reached an oral agreement with Pars to represent the investors. At this time, and until after the transaction upon which Boyert based his suit against Tauber, Boyert had no contact with Tauber. Boyert did, however, have continuing contact with Pars, who had told Boyert that he spoke for Tauber. In March of 1988, Boyert located a building for sale in Nashville, Tennessee. He notified Pars of the opportunity and sent him a letter specifying that, if a deal was made between principals, Boyert was to receive a 1.5 percent commission on the purchase price. In April 1988, Tauber sent a letter to the seller of the property confirming an offer to purchase and stating that "we are responsible to pay 1½% commission ($255,000) to outside brokers, including Dr. Julian Pars."

Tauber knew that there was a broker who was working with Pars concerning the property but did not know the broker's name.

The deal between Tauber and the sellers was closed in December 1988 for a purchase price of $17 million. However, early the next month, Pars told Boyert that Boyert would not be paid a commission for his work. Shortly afterwards, Boyert had a conference call with Tauber (his first contact with Tauber) and Pars, in which he learned that Pars was not Tauber's equity partner and that Pars had been paid a "finder's fee" of $168,625. Boyert has yet to receive any compensation for his services in locating the building and setting the negotiations in motion and has been unable to serve Pars with process. Tauber has paid no additional commission or fee to anyone.

He testified that the balance of the $255,000 ($86,375) was for closing costs, which he had previously agreed with Pars would be deducted from Pars's commission, and that his agreement with Pars required Pars to pay any other broker out of Pars's funds.

■■■ At oral argument in this court, Boyert agreed that Tauber only owes a total of $255,000 as a commission on the sale. If Tauber paid the full $255,000 commission to Pars then Boyert agrees he has no claim against Tauber because the memorandum did not set out how the commission was to be divided between Pars and any other outside brokers. Boyert maintains that the finder's fee paid to Pars was not the same as a commission and that Tauber still owes the full $255,000 commission.

## I.

Section 20(b) of RELA provides:

An action may not be brought in a court in this state for the recovery of a commission for the sale or purchase of real estate unless the promise or agreement on which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged....

TEX.REV.CIV.STAT.ANN. art 6573a, § 20(b) (Vernon Supp.1992).[1] One of the essential elements of the written agreement providing for a commission on the sale of land is that the writing name the broker. *See Moser Co. v. Awalt Indus. Properties, Inc.*, 584 S.W.2d 902, 906 (Tex.Civ.App.— Amarillo 1979, no writ); *Knight v. Hicks*, 505 S.W.2d 638, 642 (Tex.Civ.App.—Amarillo 1974, writ ref'd n.r.e.); *Levenson v. Alpert*, 399 S.W.2d 955, 956 (Tex.Civ.App.— San Antonio 1966, no writ); *see also Wasson v. Hartt*, 244 S.W.2d 258, 260 (Tex.Civ. App.—Dallas 1951, writ ref'd n.r.e.). The essential elements of a commission agreement cannot be supplied by parol evidence. *Buratti & Montandon v. Tennant*, 147 Tex. 536, 218 S.W.2d 842, 843 (1949); *Wil-*

---

1. Cases prior to 1975 interpreting this provision refer to article 6573a § 28. Article 6573a was revised by Acts 1975, 64th Leg., p. 533, ch. 216, § 1, eff. May 19, 1975. Prior to the 1975 revision, the current § 20(b) was the first paragraph of § 28. The 1975 revision made minor wording changes to the former first paragraph of § 28 when it was moved to § 20(b). The changes are not relevant to this opinion.

*son v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945).

Boyert argues that "outside brokers" is a sufficiently precise description so that the name of the broker is not being supplied entirely by parol. We disagree. We have not located nor have we been directed to authority clearly establishing the minimum requirements for identification of a broker in a writing required by RELA section 20(b). However, the question of adequate description of the land that is the subject of a brokerage agreement is frequently the subject of judicial scrutiny. We find those cases instructive. "Insofar as the description of the property to be conveyed is concerned, the writing must furnish within itself the means or data by which that particular land may be identified with reasonable certainty." *Kmiec v. Reagan,* 556 S.W.2d 567, 569 (Tex.1977) [2] (citing *Morrow v. Shotwell,* 477 S.W.2d 538 (Tex.1972); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150 (1945)); *see also Jones v. Kelley,* 614 S.W.2d 95, 99 (Tex.1981) (Writing must "furnish within itself or by reference to other identified writings then in existence, the means or data by which the particular land to be conveyed may be identified with specific certainty.").

■ A reference to "outside brokers" does not identify Boyert or any other broker with reasonable certainty. *See Buratti & Montandon,* 218 S.W.2d 842 (contract providing for the "usual commission" did not sufficiently state the commission to be paid to allow recovery under RELA § 20(b)). The term "outside brokers" does not narrow the universe of potential brokers so that the name of a particular broker is not being supplied entirely by parol. *See Watson v. Brazelton,* 176 S.W.2d 216 (Tex.Civ.App.—Waco 1943, no writ) (memorandum apportioning responsibility for paying commission between the buyer and seller but not naming broker held insufficient). Therefore, parol evidence may not be used to identify a broker when the reference in

the writing required by RELA section 20(b) is to "outside brokers."

## II.

■ Boyert argues that the memorandum does not need to comply with RELA section 20(b) because there has been partial performance of the agreement. Under the doctrine of partial performance as applied to the statute of frauds, an oral contract for the purchase of real property is enforceable if the purchaser: (1) pays the consideration; (2) takes possession of the property; and (3) makes permanent and valuable improvements on the property with the consent of the seller, or, without such improvements, other facts are shown that would make the transaction a fraud on the purchaser if the oral contract was not enforced. *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114, 1116 (1921); *Cowden v. Bell,* 157 Tex. 44, 300 S.W.2d 286, 289–90 (1957). These steps are seen as sufficient evidence of the agreement because they provide affirmative corroboration of the agreement by both parties to the agreement. *Francis v. Thomas,* 129 Tex. 579, 106 S.W.2d 257, 260 (1937); *Hooks,* 229 S.W. at 1117.

■ Although the elements necessary to enforce a brokerage contract based on partial performance may vary from those required for a contract to purchase real estate, the key element is still corroboration. Absent corroboration, partial performance of a brokerage agreement does not excuse compliance with the requirement that there be a written brokerage agreement naming the broker. *Landis v. W.H. Fuqua, Inc.,* 159 S.W.2d 228, 231 (Tex.Civ.App.—Amarillo 1942, writ refused); *see also Watson,* 176 S.W.2d at 219. The sale of real property does not corroborate the name of a broker when the name is not supplied by a memorandum of the agreement between the broker and the person who is to pay the commission.

**2.** *Kmiec* interprets the statute of frauds which is currently in Tex.Bus. & Comm.Code § 26.01. Because RELA § 20(b) uses substantially the same wording as the statute of frauds, we interpret both provisions consistently. *See Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968); *Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222, 223 (1949).

Allowing a broker to recover on the ground of his performance alone would permit enforcement of any commission agreement fully performed by the broker whether or not it complies with section 20(b). This would be in direct opposition to the expressed will of the legislature and would unduly expose the public to fraudulent claims for commissions.

*Carmack v. Beltway Development Co.,* 701 S.W.2d 37, 41 (Tex.App.—Dallas 1985, no writ).

### III.

Accordingly, we answer both certified questions in the negative.