**Opinion issued December 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00020-CV

————————————

**PRIME INCOME ASSET MANAGEMENT, INC. AND PRIME INCOME ASSET MANAGEMENT, LLC, Appellants**

**V.**

**MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF TEXAS, INC., Appellee**

---

**On Appeal from the County Court at Law No. 3**
**Galveston County, Texas**
**Trial Court Case No. CV0065437**

---

## MEMORANDUM OPINION

Appellants, Prime Income Asset Management, Inc. ("Prime, Inc.") and Prime Income Asset Management, LLC ("Prime, LLC") (collectively "the Prime Companies"), challenge the trial court's amended final judgment, entered after a

jury trial, in favor of appellee, Marcus & Millichap Real Estate Investment Services of Texas, Inc. ("Marcus & Millichap"), in its suit against the Prime Companies for breach of a broker's fee contract in connection with the sale of real property in Galveston County (the "Fee Agreement"). In five issues, the Prime Companies challenge the legal sufficiency of the evidence supporting the jury's verdict, and the trial court's award of attorney's fees to Marcus & Millichap, denial of attorney's fees to Prime, LLC, and denial of the Prime Companies' motion to transfer venue. We affirm.

## Background

Shortly after Hurricane Ike made landfall along the upper Texas Gulf Coast, Jeffrey Fript, a licensed real estate agent with the brokerage firm of Marcus & Millichap, received a telephone call from John Petricca, who Fript understood was representing a company called "Odyssey Residential." Petricca told Fript that he was looking for apartments that had been damaged during the hurricane and needed repair. After calling property owners he knew and searching industry databases, Fript found three properties located in Galveston County that he thought met the criteria, including the property at issue in this case, Marina Landing Resort. Using these specialized databases, Fript identified "Prime Income Asset Management" as the seller and Mark Nardizzi as the contact person for all three properties.

Fript called Nardizzi, who confirmed that "Prime Income Asset Management" owned all three properties. Fript told Nardizzi that he had another party, who was represented by another broker and interested in possibly buying the properties, if Nardizzi was interested in selling them. After Nardizzi confirmed that the properties were damaged and for sale, Fript passed the relevant information along to Petricca.

Fript also talked to Nardizzi about a fee for facilitating the deal. Nardizzi offered a fee of one-half percent of the sales price, and although it was "extremely low" compared to the commissions Fript normally received, he agreed to Nardizzi's offer because he understood that he would not have to do much more than what he had already done—find the properties and put together the deal for Nardizzi. Fript then drafted the Fee Agreement on Marcus & Millichap letterhead and sent it to Nardizzi for his signature.

The Fee Agreement identified Marcus & Millichap as the "Buyer's Broker" and "Prime Income Asset Management" as the "Listing Broker."  Under the express terms of the agreement, "Prime Income Asset Management" agreed that if "Odyssey Residential and/or Assigns represented by John Petricca—Dallas, TX" purchased the Marina Landing Resort, "Prime Income Asset Management" would pay Marcus & Millichap a commission at closing equal to ".50% (One-Half

3

Percent) of Sales Price." Nardizzi signed the Fee Agreement on behalf of "Listing Broker: Prime Income Asset Management."

At the time the Fee Agreement was executed, there were two separate legal entities with "Prime Income Asset Management" as part of their name: Prime, Inc. and Prime, LLC. Prime, LLC is a wholly-owned subsidiary of Prime, Inc. Fript testified that when he searched for "Prime Income Asset Management" on the Texas Real Estate Commission's website, he learned that "Prime Income Asset Management" was licensed as a "corporation broker." During the trial, Steven Shelley, a vice president of Prime, Inc. and Prime, LLC, confirmed that Prime, Inc. was a licensed real estate broker and Prime, LLC was not.

The original purchase and sale contract for Marina Landing Resort, which was admitted into evidence, identifies Marina Landing, LP, as the seller, and "ORH Acquisitions II, LLC" as the purchaser, and references Fript and Marcus & Millichap's one-half percent commission. This agreement, however, was amended numerous times before the sale closed a year and a half later. The final purchase and sale agreement omitted any reference to Fript and Marcus & Millichap's one-half percent commission, and indicated that "ORH Acquisitions II, LLC" had assigned the contract to "Chicory Court I, LP." When asked if the reference to "Odyssey Residential" in the Fee Agreement referred to "Odyssey Residential Holdings, LP," Fript testified that he did not remember but believed that it did

4

because he understood that there was only one "Odyssey Residential." James Fisher, formerly the Vice President of Development for Odyssey Residential Holdings, LP, testified that "ORH Acquisitions II, LLC" is an affiliate that Odyssey Residential Holdings, LP uses routinely to contract for and acquire properties.

When the sale of the Marina Landing Resort closed and Marcus & Millichap was not paid a commission, Marcus & Millichap filed suit against Prime, Inc. and Prime, LLC in Galveston County for breach of the Fee Agreement. In addition to a general denial, the Prime Companies asserted affirmative defenses, including the statute of frauds in the Real Estate License Act ("RELA"). *See* TEX. OCC. CODE §1101.806(c) (West 2012).[1]

After finding that Prime, Inc. (1) entered into the Fee Agreement with Marcus & Millichap, and (2) "fail[ed] to comply with the Fee Agreement," the jury awarded damages to Marcus & Millichap in the amount of the commission due under the Fee Agreement: $68,500. The jury also found that Prime, LLC was not a party to the Fee Agreement. In accord with the jury's verdict, the trial court signed an amended final judgment for Marcus & Millichap against Prime, Inc. for $68,500

---

[1] Marcus & Millichap moved for summary judgment, arguing that none of the affirmative defenses had any basis in law or in fact. The trial court granted Marcus & Millichap's motion for summary judgment on the Prime Companies' affirmative defense based on the statute of frauds and denied the Prime Companies' motion to reconsider.

in damages, $17,060 in attorneys' fees, plus appellate attorneys' fees, post-judgment interest and costs. The trial court also entered a take-nothing judgment in favor of Prime, LLC, but denied it costs against Marcus & Millichap on the grounds that Prime, LLC had unreasonably increased the costs of litigation in the case.

Both Prime, Inc. and Prime, LLC appeal the trial court's amended final judgment. Specifically, Prime, Inc. argues that (1) Marcus & Millichap failed to present legally sufficient evidence establishing that the Fee Agreement met the statute of frauds requirements of RELA, (2) even if the Fee Agreement complied with the statute of frauds, Marcus & Millichap failed to present legally sufficient evidence establishing that the Fee Agreement's conditions precedent had been satisfied, and (3) because the award of attorney's fees to Marcus & Millichap was based solely on its breach of contract claim, that award should also be reversed. Prime, LLC argues that the record does not support the trial court's denial of costs to Prime, LLC on the grounds that it unreasonably increased the costs of litigation in this case. Finally, Prime, Inc. and Prime, LLC argue that the trial court erred in denying their motion to transfer venue.

**Statute of Frauds**

Prime, Inc.'s first issue contends that the evidence is legally insufficient to establish that the Fee Agreement meets RELA's statute of frauds requirement as

6

set forth in section 11.01806(c). TEX. OCC. CODE ANN. § 1101.806(c).

Section 1101.806(c) prohibits a person from maintaining an action in Texas to recover a commission for the sale or purchase of real estate "unless the promise or agreement upon which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the document." *Id.* Strict compliance with this provision is required if a real estate broker or salesperson seeks a judicial recovery of fees. *Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 676 (Tex. 1979). The purpose of the provision is to eliminate or reduce fraud that might be occasioned on the public by unlicensed, unscrupulous, or unqualified persons. *Id.* at 675–76. A broker must plead and prove that his or her claim for a commission for the sale of a particular property is based on an instrument in writing within contemplation of section 1101.806(c) even if the defendant does not specifically plead the statute of frauds as an affirmative defense. *See Bayer v. McDade*, 610 S.W.2d 171, 172 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (stating "a broker seeking to recover a commission under [RELA] must prove a valid written agreement describing the land, even though the owner does not specifically plead the statute of frauds as an affirmative defense"); *see also* TEX. OCC. CODE ANN. § 1101.806(c).

Whether a contract is barred by the statute of frauds is a question of law for the court to decide. *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 555 (Tex. App.—Eastland 2010, pet. denied); *see, e.g.*, *Pickett v. Bishop*, 148 Tex. 207, 223 S.W.2d 222, 223 (Tex. 1949) (stating courts interpreting RELA's statute of frauds may looks to cases interpreting general statute of frauds for guidance). Courts applying section 1101.806(c) have interpreted the requirements as follows:

> To comply with [section 1101.806(c)], an agreement or memorandum must: (1) be in writing and must be signed by the person to be charged with the commission; (2) promise that a definite commission will be paid, or must refer to a written commission schedule; (3) state the name of the broker to whom the commission is to be paid; and (4) either itself or by reference to some other existing writing, identify with reasonable certainty the land to be conveyed.

*Litton Loan Servicing, LP v. Manning*, 366 S.W.3d 837 (Tex. App.—Dallas 2012, pet. denied); *Neary v. Mikob Prop., Inc.*, 340 S.W.3d 578, 584 (Tex. App.—Dallas 2011, no pet.). The essential elements of a commission agreement, including the identity of the broker or salesperson attempting to recover the commission, cannot be supplied by parol evidence. *See Boyert v. Tauber*, 834 S.W.2d 60, 61–62 (Tex. 1992) (holding that because broker's name is essential element of real estate commission agreement, parol evidence may not be admitted "to identify the broker to whom a commission is owed in an action to recover a real estate commission").

Relying on *Boyert*, Prime, Inc. contends that Marcus & Millichap cannot use parol evidence to substitute Prime, Inc.'s name as the "listing broker" in the Fee

Agreement, because naming a "broker" is an essential element of a real estate sales contract. *See id.* at 62–63. *Boyert*, however, is distinguishable. In that case, the defendant-purchaser sent a letter to the seller confirming an offer to purchase certain real estate and acknowledging that the defendant-purchaser was responsible for paying a real estate commission to "outside brokers." *Id.* at 63. The Texas Supreme Court held that the term "outside brokers" did not "narrow the universe of potential brokers" who were owed a commission under the agreement, and thus did not identify the broker with reasonable certainty because the name of a particular broker had to be supplied entirely by parol evidence. *See id.*

First, although *Boyert* states that naming a "broker" is an essential element of a real estate sales contract, the "broker" in that case was the party attempting *to recover* the commission, not the party responsible for paying the commission. The parties have not directed us to—and we have not found—any cases extending that principle to the party charged with paying the commission, even if that party is also identified as a "broker."

Second, even if *Boyert* requires a real estate agreement to "furnish within itself the means or data by which [the party charged with paying the commission] may be identified with reasonable certainty" as Prime, Inc. contends, the Fee Agreement satisfies this requirement. In contrast to the written agreement in *Boyert* that merely acknowledged that a real estate commission was to be paid to

9

"outside brokers," the Fee Agreement's identification of the party to be charged with the commission as the "listing broker," "Prime Income Asset Management," narrowed the universe of potential parties to Prime, Inc., because it was the only entity named "Prime Income Asset Management" that was licensed as a "corporation broker," according to the Texas Real Estate Commission's website. *See, e.g.*, TEX. OCC. CODE ANN. § 1101.351(a-1) (West 2012) (stating business entity may not act as broker unless licensed as broker under RELA). As such, the Fee Agreement furnished within itself "the means and data" to identify Prime, Inc. as the "listing broker" with reasonable certainty. Assuming without deciding that3 *Boyert* requires such specificity with regard to the identification of the party charged with paying the commission, we hold that the trial court did not err in concluding that the Fee Agreement satisfied RELA's statute of frauds.

We overrule Prime, Inc.'s first issue.

**Breach of Contract**

In its second issue Prime, Inc.'s argues that Marcus & Millichap failed to present legally sufficient evidence establishing that the Fee Agreement's conditions precedent had been satisfied because there is no probative evidence in the record that "Odyssey Residential and/or Assigns" purchased the Marina Landing Resort and no probative evidence that the purchaser was "represented by John Petricca – Dallas, TX," as required in the Fee Agreement. We construe this as

10

a challenge to the legal sufficiency of the evidence supporting the jury's implied finding that the Fee Agreement's conditions precedent were satisfied, and therefore, Marcus & Millichap was entitled to be paid a commission when the Marina Landing Resort sale finally closed.

When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Our review for legal sufficiency credits favorable evidence if a reasonable juror could do so and disregards contrary evidence unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support the finding. *Id.* at 822. We sustain a no-evidence contention only if: (1) the record reveals a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810.

When reviewing the evidence for legal sufficiency, we are mindful that the jury is the sole judge of a witnesses' credibility and may choose to believe one witness over another, and a reviewing court may not impose its own opinion to the

11

contrary. *Id*. We are likewise required to view the evidence in the light favorable to the jury's findings, drawing reasonable inferences in their favor, and presuming that the jury resolved any evidentiary conflicts in a manner supporting its findings. *See id.* at 820.

When asked if the reference to "Odyssey Residential" in the Fee Agreement referred to "Odyssey Residential Holdings, LP," Fript testified that he did not remember but believed that it did because he understood that there was only one "Odyssey Residential." The final purchase and sale agreement states that "ORH Acquisitions II, LLC" had assigned the contract to "Chicory Court I, LP," the ultimate purchaser. Odyssey Residential Holdings, LP's former vice president testified that the company regularly uses one of its affiliates, ORH Acquisitions II, LLC, to contract and acquire properties. Although he later recanted, Prime, Inc.'s corporate representative admitted that "Odyssey Residential and/or Assigns purchased the Marina Landing resort." Fript also testified that "John Petricca" was the buyer's broker.

Contrary to Prime, Inc.'s position, there is *some* probative evidence that "Odyssey Residential and/or Assigns" purchased the Marina Landing Resort and that the purchaser was "represented by John Petricca – Dallas, TX," as required in the Fee Agreement. Although the evidence and testimony is conflicting and inconsistent regarding "Odyssey Residential and/or Assigns" role with regard to

the ultimate sale of the Marina Landing Resort, it was within the province of the jury to judge of the witnesses' credibility, believe one witness over another, and draw reasonable inferences from the evidence presented. Although Prime, Inc. challenges Fript's credibility with regard to his testimony that Petricca represented the purchaser by arguing that Fript was not in a position to know this information, it was ultimately within the jury's province to evaluate his credibility and believe this portion of his testimony.

The record reflects more than a scintilla of evidence, that "Odyssey Residential and/or Assigns" purchased the Marina Landing Resort and that the buyer was "represented by John Petricca – Dallas, TX." As such, we conclude that the evidence is legally sufficient to support the jury's implicit finding that the Fee Agreement's conditions precedent were satisfied and, therefore, Marcus & Millichap was entitled to its one-half percent commission upon the closing of the Marina Landing Resort sale.

We overrule Prime, Inc.'s second issue.

**Award of Attorney's Fee to Marcus & Millichap**

In its third issue, Prime, Inc. argues that Marcus & Millichap was awarded attorney's fees based solely on the fact that they prevailed at trial on their breach of contract claim, and because there is legally insufficient evidence to support this portion of the trial court's judgment, the award of attorney's fees should also be

reversed. Having overruled Prime, Inc.'s first and second issues challenging the sufficiency of the evidence with regard to Marcus & Millichap's breach of contract claim against Prime, Inc., we also overrule Prime, Inc.'s third issue.

## Denial of Costs to Prime, LLC

Prime, LLC argues that the trial court's denial of costs on the grounds that Prime, LLC unreasonably increased the costs of litigation in this case is not supported by the record.

The Texas Rules of Civil Procedure provide that "[t]he successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. Texas Rule of Civil Procedure 141, however, permits a trial court, for good cause stated on the record, to "adjudge the costs otherwise than as provided by law or [the Rules of Civil Procedure]." TEX. R. CIV. P. 141. The allocation of court costs under Rule 141 is a matter for the trial court's discretion and will not be overturned on appeal unless the trial court abused its discretion. *See Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001); *Rogers v. Walmart Stores, Inc.*, 686 S.W.2d 599, 601 (Tex. 1985). Good cause is determined on a case-by-case basis. *Bethune*, 53 S.W.3d at 376*; Rogers*, 686 S.W.2d 599, 601. When the prevailing party unnecessarily prolongs the proceedings, unreasonably increases costs, or does something that should be penalized, good cause may exist to "adjudge the costs otherwise" under rule 141.

*See Bethune*, 53 S.W.3d at 377. In reviewing rulings under rule 141, we evaluate the record to determine whether it supports the trial court's decision. *Rogers*, 686 S.W.2d at 601 ("The determination of a trial judge that a particular trial strategy caused an unnecessary increase in costs should not be disturbed on appeal absent an abuse of discretion.").

In the present case, the amended final judgment states: "Good cause exists such that Defendant Prime Income Asset Management, LLC shall not recover its costs of court against Marcus & Millichap. Good cause exists because Defendant Prime Income Asset Management, LLC unreasonably increased costs in this litigation." Although the amended final judgment does not reflect precisely how Prime, LLC "unreasonably increased costs in this litigation," the record reflects that, among other things, Prime, LLC failed to produce any documents in response to Marcus & Millichap's requests for production, which in turn required Marcus & Millichap to spend additional time and money securing documents and testimony from third parties to obtain and authenticate many of the documents ultimately introduced at trial. In light of the record before us, we cannot conclude that the trial court's decision to deny Prime, LLC its costs amounted to an abuse of discretion.

We overrule Prime, LLC's issue challenging the trial court's denial of costs.

**Venue**

By their fifth issue, the Prime Companies contend that the trial court erred in denying their motion to transfer venue because there was no evidence that Galveston County was a proper venue to try Marcus & Millichap's cause of action for breach of contract and the case should have been transferred to Dallas County where the Prime Companies have their principal offices.

When a trial court's venue ruling is challenged on appeal after a trial on the merits, an appellate court conducts an independent review of the entire record to determine whether there is any probative evidence to support the trial court's venue ruling. TEX. CIV. PRAC. & REM. CODE §15.064(b); *Wilson v. Texas Parks & Wildlife Dep't*, 886 S.W.2d 259, 261 (Tex. 1994) (stating trial court's denial of motion to transfer venue is subject to de novo review).

Venue is proper "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (West 2013).  To determine whether a "substantial part" of the events or omissions giving rise to the claim occurred in Galveston County, we examine the essential elements of Marcus & Millichap's cause of action for breach of contract. *See Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 681 (Tex. App.—Austin 2003, no pet.). The satisfaction of a contractual condition precedent "logically forms a substantial part of the events giving rise to" a breach

16

of contract claim. *See Southern Cnt'y Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 460 (Tex. App.—Corpus Christi 2000, no pet.).

If there is any probative evidence in the record demonstrating that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993); *Chiriboga*, 96 S.W.3d at 681; *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 471 (Tex. 1995) (stating that appellate court must uphold trial court's venue determination if record contains any probative evidence that venue was proper, even if preponderance of evidence is to the contrary). Although we view the record in the light most favorable to the trial court's ruling, we do not defer to the trial court's application of the law. *Ruiz*, 868 S.W.2d at 758; *Chiriboga*, 96 S.W.3d 677–78.

Marcus & Millichap contends that venue is proper in Galveston County because it alleged that Prime, Inc. breached a contract for commission on the sale of three Galveston County properties and that Fript visited the properties as part of his performance of Marcus & Millichap's obligations under the Fee Agreement. The Prime Companies, on the other hand argue that venue is not proper in Galveston because the lawsuit was not a suit regarding land, instead, it was a breach of contract claim for payment of commissions, and contract claims generally accrue in any county where the contract was formed, where it was to be

performed, or where it was breached. *See Killeen v. Lighthouse Elec. Contractors, LP*, 248 S.W.3d 343, 348 (Tex. App.—San Antonio 2007, pet. denied). The Prime Companies further contend that Fript's visits to the apartment sites were not material to the claim or done in support or advancement of the Fee Agreement (i.e., unrelated to Marcus & Millichap's performance of the Fee Agreement).

Here, the obligation under the Fee Agreement to pay Marcus & Millichap the contractual commission arose only when the Galveston County real estate was sold. Although this is not a suit regarding land, the sale of property located in Galveston County forms "a substantial part of the events giving rise to" this breach of contract claim because the sale of the property was a condition precedent to the obligation to pay a commission to Marcus & Millichap. *See Ochoa*, 19 S.W.3d at 460 (stating that satisfaction of contractual condition precedent "logically forms a substantial part of the events giving rise to" breach of contract claim). Fript also testified that he visited all three properties on a "couple" of occasions as part of his role in the "sale of the three apartment complexes" in Galveston County. As such, the record reflects that the real property at issue is located in Galveston County, and that Fript visited the properties in Galveston County as part of his role as facilitator of the property's purchase and sale. In light of this evidence, we cannot say that there is *no* probative evidence that venue was proper in Galveston County. *See Beadle*, 907 S.W.2d at 471 (stating appellate court must uphold trial court's

18

venue determination if record contains any probative evidence that venue was proper).

We overrule the Prime Companies' fifth issue.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.