ACCEPTED
05-18-01017-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/19/2019 11:44 PM
LISA MATZ
CLERK

## CASE NO. 05-18-01017-CV

## IN THE COURT OF APPEALS
## FOR THE FIFTH SUPREME JUDICIAL DISTRICT OF TEXAS
## DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/19/2019 11:44:39 PM
LISA MATZ
Clerk

## LISA HAWKINS,
**Appellant**

## V.

## MICHAEL JENKINS and WANDA JENKINS,
**Appellees**

Appeal from the County Court at Law No. 4, Dallas County, Texas

Cause No. CC-18-01539-D

---

## APPELLEE'S BRIEF

---

Anthony W. Reed
Texas Bar No. 24029789
3245 W Main Street, Ste 235-346
Frisco, Texas 75034
Tel. (469) 579-5739
Fax. (214) 975-6854
E-Mail: areed@thereedlawfirm.com
Attorney for Appellees Michael Jenkins and
Wanda Jenkins

i

## IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of the parties, attorneys, and other persons with an interest in the outcome of this lawsuit:

**Lisa Hawkins,** Appellant

Represented at trial and in this appeal by:

Walter L. Irvin
State Bar No. 10423000
5787 South Hampton Road, Ste 210, LB 122
Dallas, Texas 75232
(214) 330-1100 (p)
(214) 331-2595 (f)
wirvin@sbcglobal.net

**Michael Jenkins and Wanda Jenkins,** Appellees
**Appellee's Trial Counsel**
Adam Stone
The Law Offices of Alex R. Herndandez, PLLC
111 Congress Ave., 4th Floor
Austin, Texas 78701
(888) 907-8984 (p)
(888) 278-9044 (f)
arh@alexhernadezcase.com

**Appellee's Appeal Counsel**
Anthony W. Reed
The Reed Law Group, PLLC.
3245 W Main Street, Ste 235-346
Frisco, Texas 75034
(469) 579-5739 (p)
(214) 975-6854 (f)
areed@thereedlawfirm.com

**TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL    ii

TABLE OF CONTENTS    iii

INDEX OF AUTHORITIES    iv-v

STATEMENT OF THE CASE    1-2

RESTATED ISSUE(S) BEFORE THE COURT    2

STATEMENT OF FACTS    3-6

SUMMARY OF ARGUMENT    7-8

ARGUMENT    8-12

PRAYER    12-13

CERTIFICATE OF COMPLIANCE    13

CERTIFICATE OF SERVICE    13

# INDEX OF AUTHORITIES

**Cases**

*Boyer v. Tauber*, 834 S.W.2d 60 (Tex.1992) 11, 12

*Chambers v. Pruitt*, 241 S.W.3d 679, 684 9
(Tex.App.-Dallas 2007, no pet.)

*Dent v. Pines,* 394 S.W.2d 266, 268-269 9
(Tex.Civ.App—Houston [1S$^t$ Dist.] 1965, no writ

*Doggett v. Nitschke,* 498 S.W.2d 339, 339 (Tex.1973) 8

*Falcon v. Ensignia,* 976 S.W.2d 336, 338 10
(Tex.App.—Corpus Christi 1998, no pet.)

*Fandey v. Lee,* 880 S.W.2d 164, 169 10
(Tex.App.—E1 Paso 1994, writ denied)

*Haith v. Drake,* 596 S.W.2d 194, 196 9
(Tex.Civ.App-Houston [1s$^t$ Dist.] 1980, writ ref d n.r.e.)

*Mitchell v. Armstrong,* 911 S.W.2d 169, 271 9, 10
(Tex.App—Houston [1" Dist. 1995, writ denied.)

*Yarto v. Gilliland*, 287 S.W.3d 83 (Tex.App—Corpus Christi 2009) 10

STATUTES

*Tex. Govt. Code Ann. §27.031(b)* (Vernon Supp. 2001)

1.   **STATEMENT OF THE CASE**

The appeal in this matter proceeds in the same manner in which the matter proceeded previously from a factual basis. In typical fashion, Appellant's counsel quips that Shakespeare "said it best" and writes, "What a web we weave when at first we try to deceive", however, the quoted line is actually a phrase from Sir Walter Scott in a poem named Marmion, Canto VI, Stanza 17, published in 1808, and more specifically states, "Oh, what a tangled web we weave, When first we practise to deceive!" What truly began as an attempt by an uncle attempting to bail out a niece and salvage a home had disintegrated into a litany of misrepresentations and fallacies perpetrated to facilitate an unfair, irresponsible, and unequitable attempt to obtain the fruit of Appellees labor, benefit of Appellees funds, benefit of Appellees kind-hearted gestures, and obtain an unjust enrichment and unlawful dispossession of Appellees from the property the subject of this suit, 504 Dogwood Trail, Dallas, Texas 75115. This is an appeal from an Order of Dismissal granting a dismissal of an eviction appeal in favor of the Appellees Michael and Wanda Jenkins that was filed in Dallas County Court at Law No. 4, Dallas County, Texas on or about August 3, 2018. The Order of Dismissal was based upon the trial court granting Appellees Michael Jenkins and Wanda Jenkins Plea to the Jurisdiction and Plaintiff's eviction appeal/petition was dismissed for lack of subject matter

jurisdiction because the trial court determined there was a factual dispute concerning whether Appellees had equitable title and Appellees put on the record that the title issue was an open issue in another court, and the trial court determined the possession issue could not be addressed until the title issue was addressed. Appellant appeals the decision based upon the restated issues identified herein below.

2.      **<u>RESTATED ISSUES BEFORE THE COURT</u>**

2.1.    Whether the Trial Court erred in dismissing Appellant's claims for subject matter jurisdiction after determining there were fact issues concerning equitable title that needed to be addressed before the Trial Court could exert subject matter jurisdiction over an eviction matter?

2.2     Whether the Trial Court erred in dismissing Appellants Wrongful Detain suit more specifically:

A. Whether Appellees established fact issues to establish their equitable title remedy

1. Whether Appellees established an oral contract

2. Whether Appellees equitable title remedy is quashed by the written contract

B. Whether the Trial Court could determine possession without entertaining title issues

3. **STATEMENT OF FACTS**

3.1    Lisa Hawkins owned a property located at 504 Dogwood Trail, Dallas, Texas 75115, hereinafter the "Property." Lisa Hawkins filed for bankruptcy due to falling behind on her first and second mortgage and was no longer living at the Property the summer of 2015.

3.2    During the summer of 2015, Michael Jenkins approached his niece, Lisa Hawkins, about purchasing the property located at 504 Dogwood Trail, Dallas, Texas 75115. Lisa Hawkins obtained approval from the bankruptcy court to sell her property. Lisa Hawkins indicated an intent, whether to obtain a more favorable position with her second mortgage or not with Dyck Oneal, to walk away from her property as evidenced by her email to David Arledge (Appellant's Exhibit to Transcript Tab 7, Page 19 Defendant's Exhibit 1), and her testimony concerning the second lien on the Property where she testified to the Trial Court, "That's the second lien. I talked to them about reducing my loan, and then they – we had a back-and-forth. And then I asked them – I told them, well, if I – if I don't get this done, then I'll walk away from the house, you don't get anything. So at that time they considered they would reduce what was $!4,000 to $3,000." (Appellant's Transcript Tab 5, Page 54).

3.3    Lisa Hawkins verbally agreed to sell the Property to Appellees for $160k. Lisa

Hawkins testified she consistently intended to sell the Property to Appellees for $160k, including, but not limited to her testimony, "he did not offer me what we agreed upon at the $160,000." (Appellant's Transcript Tab 5, Page 62) Furthermore, Lisa Hawkins testified to a sell price of $160k, "if he would have signed for the 160 – that he was approved for, then I would have sold the house to him at 160. That was our agreement." (Appellant's Transcript Tab 5, Page 65)

3.4     On or about August 3, 2018 based upon what Appellees testified to in the prior hearing on or about April 27, 2018, of which Appellant did not refute, and of which the Court based its' ruling upon such facts and evidence of record in the hearings and arguments made before the Trial Court in the prior hearing and the August 3, 2018 hearing, that after the contract that was executed in the underlying case was no longer of effect, that "Ms. Hawkins was still trying to sell the property." (Appellant's Transcript Tab 6, Page 32) The Trial Court further held, "I don't really think it's deniable that there was an understanding or their (sp) position or oral contract to sell the house." (Appellant's Transcript Tab 6, Page 32) The Trial Court further held regarding Appellees conduct with Appellant, "They clearly made improvements. They made payments to her on a monthly basis, at least until September of last year when they stopped making payments after this dispute about what the ultimate sales price was going to be. Because

that Defense Exhibit 5, October 17th about this Ms. Lisa saying she wants the price to be 175 so she wont net what expected, equitable 160." (Appellant's Transcript Tab 6, Page 62) That Appellees remained in the Property after the financing was not approved binding the written contract and ultimate performance by February 2016, continued to make improvements, continued to make payments to Appellant and pursuant to the Court, "isn't there at least a factual dispute on whether or not they've sent some equitable title to the property, is the point." (Appellant's Transcript Tab 6, Page 33) The Trial Court did not resolve the equitable title dispute and stated, "Foreclosure can happen. Or even if they litigate equitable title, they'll have to, at best, get a percentage and then she can – Ms. Hawkins can force the sale of the property because she'll have the title interest as well." (Appellant's Transcript Tab 6, Page 34) The Court on the record recognized the payments as house payments and thus, no landlord-tenant relationship existed between the parties. (Appellant's Transcript Tab 6, Page 35)

3.5     The Trial Court granted Appellees plea to the jurisdiction because there was enough evidence to create a fact issue concerning equitable title, and thus, the Trial Court could not exercise jurisdiction over the possession issue.

4       The issue of whether Appellee performed its' obligations under a contract or not is the basis for the merit of Appellee's breach of contract claim. Appellant

entered into a verbal contract with the Appellees, in which she sold all her rights and interest to the property in question located at 504 Dogwood Trail, Desoto, Texas 75115, Dallas County, Texas. The Plaintiff paid the Defendant more than $7500.00 in cash and other consideration for all of Appellant's rights and interest in the Property, paid off a second lien worth $14,000.00 for $3,000 after negotiating the second lien down, and paid over $36,000.00 in mortgage payments to Appellant. Appellees have spent more than $50,000.00 renovating and repairing the Property. These renovations constitute permanent and valuable improvements on the property. Appellant agreed to sign any and all the documents to transfer the title to the Appellees once financing was secured. However, when financing was secured with Quicken Loans in 2017 Appellees discovered that Appellant had not been paying the mortgage payments. In fact, Appellant was cashing the mortgage checks and using the funds for her personal use. Quicken Loans had approved Appellees for a loan, but not on the property in question due to Appellant not paying the mortgage and letting the property go into pre-foreclosure status. Appellees fully performed their obligations under the contract and thus are entitled to transfer of 100% equitable title to Appellees. This title issue takes the possession issue outside the jurisdiction of the Trial Court. Appellant failed and refused to transfer her ownership as promised.

4. **SUMMARY OF ARGUMENT**

4.1     Appellees will address the issues and attempt in all means to be brief. Appellant is correct as it pertains to the history and well-established principles as it pertains to a claim for equitable title. The Trial Court found that after the written contract was extinguished, Appellees and Appellant continued to conduct themselves in furtherance of an oral real estate purchase without the terminated written contact, whereby Appellees continued to perform fulfilling the statutory grounds to factually argue an equitable title dispute that was actively being pursued in a suit to quiet title in Dallas County District Court after the expiration and/or termination of the written contract between the parties. The continued performance pursuant to an oral contact included Appellees making permanent improvements, including, but not limited to HVAC system, paint, install security system, replaced trees, plants, sod, built a fence around the house, cleaned, bleached and sanitized the walls and house, removed a large tree and replaced rotted siding on the home and trim around doors and windows, and financial contributions including continued making mortgage payments after the written contract did not close, gave Appellant a 2002 S-Type Jaguar, valued at approximately $4,000.00, paid-off the second lien for $3,000.00. Appellant suggests the Trial Court should have deferred to the Dallas County District Court on the title issue and seek a ruling

from the Dallas County District Court, but Appellant provides no record of having made such a request in either dispute, the Trial Court nor the District Court referenced in Appellant's summary. Appellant offers a cursory "what if" argument to boot strap her unripe case for possession instead of addressing the title issue head-on.

5. **ARGUMENT**

5.1     Whether the Trial Court erred in dismissing Appellant's claims for subject matter jurisdiction after determining there were fact issues concerning equitable title that needed to be addressed before the Trial Court could exert subject matter jurisdiction over an eviction matter? The Trial Court did not exercise jurisdiction over the equitable title issue. First and foremost, no landlord-tenant relationship existed between the parties. Appellant has not offered any signed lease agreement between the parties. Furthermore, even if Appellant was attempting to proceed in a forcible detainer action against Appellees, title to property must be determined before this forcible detainer matter can continue, and a suit "for the recovery of land" is a suit that determines title and falls outside the purview of the County Court. *Doggett v. Nitschke,* 498 S.W.2d 339, 339 (Tex.1973) Neither a justice court nor a county court on appeal has jurisdiction to determine the issue of title to

real property in a forcible detainer suit. Tex.Civ.P.746; *Mitchell v. Armstrong,* 911 S.W.2d 169, 271 (Tex.App—Houston [1" Dist. 1995, writ denied.) *Chambers v. Pruitt,* 241 S.W.3d 679, 684 (Tex.App.-Dallas 2007, no pet.) ("District courts generally have exclusive jurisdiction to determine title to real property.") Appellees are disputing title through an equitable title dispute based upon partial performance and due to the nature of the title disputes, the title issue is significantly intertwined with possession. *Dent v. Pines,* 394 S.W.2d 266, 268-269 (Tex.Civ.App—Houston [1S$^t$ Dist.] 1965, no writ. In cases involving a genuine issue of title, neither the justice court, nor the county court on appeal has jurisdiction. *Mitchell,* 911 S.W.2d at 171; *Haith v. Drake,* 596 S.W.2d 194, 196 (Tex.Civ.App-Houston [1s$^t$ Dist.] 1980, writ ref d n.r.e.). The factual history of this dispute is complex and involves bankruptcy, permission for Appellant to sell to Appellees, payment of a second lien by Appellees, substantial permanent improvement to the property leading to an increase in the value of the Property, payment of mortgage payments, approval of two occasions for a loan that were frustrated by Appellant, and an unfettered willingness throughout the process for Appellees to make payments, an on-going verbal understanding that the Property will be sold to Appellees, continued improvements, transfer title to a vehicle all while Appellees lived at the Property, and thus the issue of possession is not simple and is substantially intertwined with

the title issue and cannot be adjudicated without first determining the title issue(s). *Falcon v. Ensignia,* 976 S.W.2d 336, 338 (Tex.App.—Corpus Christi 1998, no pet.; *Mitchell,* 911 S.W.2d at 171; *Fandey v. Lee,* 880 S.W.2d 164, 169 (Tex.App.—E1 Paso 1994, writ denied). The Trial Court simply did not have jurisdiction due to the affirmative defense and plea to the jurisdiction filed by Appellees, *Dass, Inc. v. Smith,* 206 S.W.3d 197, 200 (Tex.App.—Dallas, 2006, no pet.) held that justice court did not have jurisdiction when one party argued that it bought the property and the other party argued that there was a landlord-tenant relationship. As specified herein above, the Trial Court did not exercise jurisdiction but specified fact issues existed as it pertained to an equitable title issue and thus, due to multiple parties arguing an ownership interest in the Property. Appellees established a 100% equity interest in the Property. Appellant has set forth the case law and statutory basis that the Trial Court could not proceed due to subject matter jurisdiction. *Yarto v. Gilliland*, 287 S.W.3d 83 (Tex.App—Corpus Christi 2009), the Court held that because the purchaser performed all the obligations under the oral contract, the issue of equitable title was raised, thus removing the case from the jurisdiction of the justice court. A Justice Court is expressly denied jurisdiction to determine or adjudicate title to land. *Tex. Govt. Code Ann. §27.031(b)* (Vernon Supp. 2001) As Appellant has argued, if the Justice Court lacked jurisdiction, the

County Court likewise lacks jurisdiction. The Trial Court did not err in dismissing the matter for lack of subject matter jurisdiction.

5.2 Whether Appellees established fact issues to establish their equitable title remedy as Appellees established an oral contract and was not subject to a written signed earnest money contract. The Trial Court record shows as specified factually herein above that Appellant continued, after expiration and termination of the written contract between the parties for Appellees to purchase the property. Appellant specifically stated her intent, and through her counsel's argument that the contract was repudiated and terminated, yet Appellant verbally continued to seek to sell the Property to Appellees as specified herein above in her testimony. In *Boyer v. Tauber*, 834 S.W.2d 60 (Tex.1992), the Texas Supreme Court set forth the elements of the doctrine of partial performance, opining that an oral contract for the purchase of real property is sufficiently corroborated and enforceable if the purchaser:

(1)     Pays consideration.

(2)     Takes possession of the property; and

(3)     Makes permanent and valuable improvements on the property with the consent of the seller.

The Trial Court record shows that Appellees continued to pay consideration after February 2016, remained in possession of the property, and continued to make permanent improvements to the property with the consent of Appellant. Jenkins has

satisfied every element of the partial performance doctrine, as previously set forth herein above. ***Boyer v. Tauber****,* 834 S.W.2d 60 (Tex.1992). The parties were no longer operating under the written agreement. The Trial Court recognized through Appellant's testimony her intent to sell, the house payments made, the improvements to the Property, and had possession. Appellant grants possession in her appeal. The agreement referenced by Appellant does not contain any lease attached to the Agreement as no lease existed between the parties. Appellees performance and Appellants conduct after the expiration and termination of the Real Estate Purchase Agreement ratified Appellees equitable title.

5.3 The final point as to whether the Trial Court could make a determination concerning possession without addressing title has been addressed in the prior arguments, but will be replied to herein specifically by stating that due to the intertwined nature of the transaction, and Appellees factual disputes concerning their ownership interest through equitable principles, the title issue must be resolved before any possession issues through forcible detainer can be addressed.

## 6. **PRAYER**

6.1 The Court should rule for the Appellees pursuant to the procedural, administrative, common law and statutory law. The Trial Court should have, upon a review of the appeal, deny Appellant's requests, and affirm the ruling of the Trial

Court, and award Appellees reasonable attorney fees and cost incurred in this appeal, and grant Appellees such other and further relief, at law, or in equity, as Appellees may show themselves to be entitled or the Court deems proper.

Respectfully submitted,

By: /s/ Anthony W. Reed, Esq.
    Anthony W. Reed, Esq.
    Texas Bar No. 24029789
    3245 Main Street, Ste 235-346
    Frisco, Texas 75034
    Tel. (469) 579-5769
    Fax. (214) 975-6854
    areed@thereedlawfirm.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the brief requirements of this Court and is 2877 words long.

By: /s/ Anthony W. Reed
    Anthony W. Reed, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of June 2019, a true and correct copy of the foregoing Appellee Brief was duly served to Appellant through his counsel of record, Walter Lewis Irvin, 5787 S. Hampton, Rd., Ste 210, One West Hill, LB 122, Dallas, Texas 75232-6333, (214) 330-1100, wirvin@sbcglobal.net.

By: /s/ Anthony W. Reed
    Anthony W. Reed, Esq.